## Miner *et ux. versus* Atherton's Executor.

If a father, by his will, give a legacy to a child, it is considered as a portion ; and if the father afterwards, in his lifetime, advance or secure a portion for that child, it is an ademption of the legacy, in whole, or *pro tanto*.

The presumption that the advancement is intended as an ademption of the legacy, is one that may be rebutted or confirmed by parol evidence of a different intention by the testator; and where evidence is admissible for that purpose, counter evidence is also admissible.

A father, by his will, gave a minor daughter a legacy of $1400; and afterwards, during the minority of his daughter, executed to a trustee, a bond, with sureties, conditioned for the payment of the sum of $30 per annum, for the use of his said daughter, during his lifetime, and the sum of $1400 within one year after his decease, with interest from the date of his death, and in the event of the decease of his said daughter, for the use of her heirs: · *Held*, that this was an ademption of the legacy given by the will.

ERROR to the Common Pleas of *Luzerne county*.

This was an action of *assumpsit* by Charles A. Miner and Eliza R. his wife, against Thomas F. Atherton, executor of Elisha Atherton, deceased, to recover a legacy of $1400 given by the will of the testator to his daughter, the said Eliza R. Miner. The parties agreed upon a case stated, in the nature of a special verdict, in which the following facts were submitted for the opinion of the court :—

On the 23d April 1846, Elisha Atherton, the testator, made his last will and testament, in which he made the following provision for his daughter Eliza, then in her minority : " I give and bequeath unto my daughter Eliza *a legacy* of $1400 to be paid to her one year after my decease, if she shall then have attained the age of twenty-one years, if not, then to be paid to her on her marriage, or when she shall be twenty-one years old, payable on the event which shall first happen. The rest and residue of my estate real and personal, I give and bequeath in equal parts, share and share alike, to my four other children above named and their heirs for ever, to be enjoyed as follows : the shares of Thomas F. Atherton, James P. Atherton, Sally, Henry, and Lydia Atherton, to be charged with the encumbrance and duty of making a comfortable provision for the personal support of my daughter Eliza, if she should become impoverished, and need it, and my executor hereafter named to see to the discharge of this duty. It being unlikely that this support will be needed, the present prospects of my daughter Eliza, as to property, being

more flattering than those of my other children, and this being the cause why I have made a difference between her and my other children, in the bestowment of my property."

On the 20th August 1849, Elisha Atherton executed a bond, with sureties, to William R. Maffit, as trustee of Eliza R. Atherton, in the penal sum of $2800, with the following condition:—

"The condition of this obligation is such, that if the above bounden Elisha Atherton shall and do well and truly pay or cause to be paid unto the above-named William R. Maffit, trustee as aforesaid, and for the use of the said Eliza R. Atherton, or to his certain attorney, executors, and administrators, the sum of $30 on the first days of September in each and every year during his natural life; and if the executors, administrators, or heirs of the said Elisha Atherton shall, within one year after his decease, well and truly pay or cause to be paid to the said William R. Maffit, for the use of the said Eliza R. Atherton, or to his certain attorney, executors, or administrators, the full sum of $1400, like lawful money as aforesaid, together with interest thereon from the decease of the said Elisha, until the same shall be paid (and it is expressly stipulated upon the part of the said Elisha Atherton, and by and between him and the said William R. Maffit, trustee as aforesaid, that in the event of the death of the said Eliza R. Atherton, that the said moneys secured by this obligation shall be paid to the said trustee, or to his certain attorney, executors, and administrators, for the use and enjoyment of the heirs of the said Eliza R. Atherton—excluding however the heirs of the half-blood on her father's side—or to whomsoever she may devise or bequeath the same by her last will and testament) without fraud or further delay, then and in these cases, the above obligation to be void and of no effect, otherwise to be and remain in full force and virtue."

Eliza R. Atherton intermarried with Charles A. Miner, on the 19th January 1853, and attained her majority on the 14th March 1853. Elisha Atherton, the testator, died on the 1st April 1853, and on the 15th, his will was proved, and letters testamentary were granted to the defendant.

The court below (CONYNGHAM, P. J.) gave judgment for the defendant on the case stated, and delivered the following opinion:—

"This case is submitted as a case stated, as upon special verdict, either party to be at liberty to take a writ of error: it being agreed that the plaintiffs are entitled to recover the amount of a legacy of $1400, with interest from 1st April 1854, unless said legacy be adeemed or satisfied—the entire sufficiency of the estate and demand made before suit brought being admitted.

"On the 23d April 1846, Elisha Atherton, the defendant's testator, made a will, which was duly proved on the 15th April 1853, and letters testamentary issued to the defendant, the said Elisha

[Miner *et ux. v.* Atherton's Executor.]

having died on or about the 1st day of April 1853. The said testator, by said will, gave as a legacy to his daughter Eliza, the sum of $1400, to be paid to her one year after *his* decease, 'if she shall then have attained the age of twenty-one years, if not, then to be paid to her on her marriage, or when she shall be twenty-one years old, payable on the event which shall first happen.' The residue of his property he gave to his four other children, half-blood brothers and sisters of said Eliza, dividing it into distinct portions, and provided further that such last shares should be charged 'with the encumbrance and duty of making a comfortable provision for the personal support of *his* daughter Eliza, if she should become impoverished and need it, and his executor to see to the discharge of this duty. It being unlikely that this support will be needed, the present prospects of *his* daughter Eliza as to property being more flattering than those of his other children, 'this being,' says he, 'the cause why I have made a difference between her and my other children in the bestowment of my property.'

"Eliza Atherton, the above-named daughter, and one of the plaintiffs, was married to C. A. Miner, the other plaintiff, on the 19th January 1853, and became of full age on the 14th March 1853. She was, then, both married and of age, at the time the legacy vested, on the death of her father, so that by the terms of the will, the legacy became payable one year after the death of the testator.

"On the 20th August 1849, the said Elisha Atherton, with Thomas F. Atherton, Thomas P. Hunt, and Giles Slocum, as his sureties, gave a bond to William R. Maffit, trustee of Eliza R. Atherton (the legatee in the above will), in the penal sum of $2800, conditioned for the payment by the said Elisha, to the said W. R. Maffit, trustee as aforesaid, for the use of the said Eliza, of the sum of $30, on the 1st day of September, in each and every year during the natural life of the said Elisha, (here follow further words in said condition), 'and if the executors, administrators, or heirs of the said Elisha shall within one year after his decease well and truly pay, or cause to be paid, to the said W. R. Maffit, for the use of the said Eliza, or to his certain attorney, executors, or administrators, the full sum of $1400, like lawful money as aforesaid, together with interest thereon from the decease of the said Elisha, until the same shall be paid (and it is expressly stipulated upon the part of the said Elisha Atherton and by and between him and the said William R. Maffit, trustee as aforesaid, that in the event of the death of the said Eliza R. Atherton, that the said moneys secured by this obligation shall be paid to the said trustee, or to his certain attorney, executors, and administrators, for the use and enjoyment of the heirs of the said Eliza R. Atherton—excluding, however, the heirs of the half-blood on her

[Miner *et ux. v.* Atherton's Executor.]

father's side—or to whomsoever she may devise or bequeath the same by her last will and testament, without any fraud, &c.'

"This bond, since the death of Elisha Atherton, has been sued, is now in judgment, and having been fully secured by the estate of Mr. Atherton, has been suffered to remain without collection only for the convenience of the parties—so far as any question arises in the present case—being agreed to be considered paid; its appropriation by the plaintiff and collectability at any time, when demanded, being undoubted.

"The question now raised, under the case stated finding the above facts, is, whether this bond thus paid, or secured to be paid, so given by Elisha Atherton in his lifetime, is to be considered an ademption or satisfaction of the legacy of a like amount under the above cited will. The point must be disposed of under the papers alone, as no evidence has been given otherwise to show the intent of the testator and obligor in the transaction.

"The general principle cannot be disputed, that, when a father, by will, gives a portion to a child, and afterwards, upon the marriage of that child, or any other occasion, advances to the child a like sum, such advance will be deemed an ademption or satisfaction of the legacy, as equity will never favour double portions: 1 *Story's Eq.* §§ 1110, 1111, 1112, and in note; 1 *Rop. on Leg.* 364; *Ward on Leg.* 265–6. The same doctrine is recognised in this state in Swoope's Appeal, 3 *Casey* 59. Again, the rule has never yet been departed from, that, *primâ facie*, a portion to the child, by the will of a parent, if there is any other provision, is a satisfaction, unless it be clearly shown, that it is not so intended, and between parent and child small circumstances are not sufficient to repel the presumption: *Worthington on Wills* 86–7. The rules which make this general principle applicable to particular cases are also thus stated, 'that to waive the ademption, as in this case, the advancement must be—1st, equal;—2d, equally beneficial;—3d, *ejusdem generis;*—4th, certain:' *Worthington on Wills* 88.

"The first inquiry we must make in the case before us, is, whether the bond above stated, is to be considered an advancement or payment, to or for the benefit of the legatee under the will. In deciding 'what is to be considered an advancement out of the personal estate of a father, so as to exclude a child from a distributive share, it is said, that a provision made for a child by settlement, whether voluntary, or for a good consideration, is an advancement. Neither is it requisite in order to constitute an advancement, that the provision should take place in the father's lifetime:' 2 *Wms. on Executors* 1289; Edwards *v.* Freeman, 2 *P. Wms.* 439–40; *Swinb.* 165; *Worthington on Wills* 245, in note.

"In the present case, the bond is a settlement made for the child. It provides for the payment of $30 per annum, during

the life of the testator, a present benefit to the child, and the payment of a larger sum after his death; so far, under the definition above cited providing for a certain benefit to the child, partly present and immediate and partly future, secured by an obligatory instrument under seal, it would seem to be an *advancement*, unless it can be shown to have originated in, or arisen out of, some new motive or consideration, showing it not to be the mere voluntary payment or gift of the parent.

"It does not appear here, why or for what reason this particular bond was given to the trustee, but it is argued, that being put in the shape of a bond, it is to be held the acknowledgment of a debt to the daughter, which, unless explained, will take from it its alleged character as an advancement. We have said, that there is nothing before us to show why the bond was given—no previous existing consideration, which the father was bound to pay or arrange, to or for the daughter; while in the will, he clearly declares that the amount therein given to her, is to be her full portion in the *bestowment* of his estate, saving only the unlooked for and mere possible circumstance of her poverty needing assistance; and he gives the reason why this shall be her portion, because her prospects, as to property, are more flattering than his other children. There is also in the special words in the condition of the bond, not drawn according to the usual language, providing for the payment of a sum of money to an individual, which on the death of such individual would go to his legal representatives, a particular clause introduced, providing how the money is to descend, to the half-blood relations on the mother's side (in fact the trustee himself), or as the *cestui que trust* may dispose of it by will. Again, the sum of $30 per annum can have no reference to interest upon a debt; for it would be at a less rate than 2¼ per cent. on the principal, which after the death of the father calls for full interest. This annual payment would seem to be a mere arbitrary amount, not fixed by anything, as far as we know, but the will of the obligor. Why, if it was a debt, should the obligor exercise any control over its mode of payment, beyond merely the time, when it might be demanded at his hands or at the hands of his executors?

"This bond is, in truth, so much in the nature of a settlement, over which the obligor claims and exercises a right to limit and direct its appropriation and descent in case of death, different from the manner in which as an ordinary debt it would pass by law, that we cannot but consider it, in the absence of any evidence of previous indebtedness, or any consideration for it more than appears from the attached seal, as a gift or settlement, on the part of the obligor, which would draw to it the character of a voluntary bond or advancement. In the same connection too, we may regard the amount of the principal sum, and the time of the payment,

both agreeing with those named in the will, and now claimed to be a free and voluntary legacy.

"We assume, then, that the bond, under the circumstances appearing on the papers alone, may be regarded as an advancement, and we further proceed to apply to it the rules above laid down, for the ademption of a legacy, by such an advancement, and to inquire whether the legacy in this case was adeemed:

"1st. It requires no calculation to show that it is equal to the portion given by the will.

"2d. It is equally beneficial, the amount of the principal sum is the same (Brown *v.* Dawson, 2 *Vern.* 498), payable at the same time, one year after the decease of the testator and obligor, with the added present advantage of $30 per year during the life of the obligor; also, by the giving of an irrevocable paper, instead of a will, liable to be revoked, and, in the words of the condition, guarding against any change by the testator, and danger of lapse to the legacy, by the death of the daughter in the lifetime of her father. The advancement or undertaking by bond is clearly of an equally beneficial character, and, for the same reason, it is apparent that, according to the 4th rule, it must be judged equally or *even more certain*, it is absolute, as all contingency is removed.

"3d. Is it then *ejusdem naturœ* or *generis?* Both are for the payment of the same amount in money, and, at the same time, as contingencies have been removed by the actual happening of events, one year after the death of the testator and obligor. Under the legacy alone, there might have been, had the father died earlier, a contingency depending upon the time of her marriage, which might have postponed the time for payment of the legacy, something later than that stipulated in such event in the bond, which was to be one year after the death of the obligor. Now such a difference *is* very slight, and all in favour too of the obligee under the bond. Suppose that instead of the bond being given in 1849, the money had been at that time actually paid to the trustee, as an advancement, it would clearly have been an ademption. Now we cannot consider that a stipulation for the future payment of the money, which might, upon a contingency, fall due *before* the legacy, ought less to operate as an ademption, than the actual payment of the money without bond.

"The differences which we discover between the legacy and the bond or settlement are very slight. The rule, recognised in equity, is, that slight differences between the advancement, and the testamentary portion, will not rebut the presumed ademption of the former: 2 *Roper on Wills* 369–71, and the cases there cited; 2 *Story's Eq.* § 1111. See also 2 *Wms. on Executors* 1143, and the cases referred to in the notes, where differences much greater than in the present case are not deemed sufficient to repel the ordinary presumption. So, in Trimmer *v.* Bayne, 7 *Ves.* 515,

[Miner *et ux. v.* Atherton's Executor.]

Lord ELDON says, 'there is this distinction between cases of double portions and covenants, namely, that in considering whether the obligation can be held to have been complied with, slight circumstances of differences are overlooked with regard to double portions, whilst a stricter rule must be applied as to the satisfaction of a covenant.' We refer also to the case Hartopp *v.* Hartopp, 17 *Ves.* 190–1, when the differences between the legacy and the after settlement were much more distinct than here, with a doubt also, whether the provisions of the legacy were not more beneficial than under the later settlement, and yet Sir WILLIAM GRANT, the Master of the Rolls, held the presumption of ademption not to be repelled. In the case now before us for disposition, all the differences, slight as they are, are clearly in favour of the bond and settlement, as has been shown heretofore. The chance of lapse of the legacy in favour of the other children, the residuary legatees and devisees under the will, brothers and sisters of the half-blood on the father's side, now in the present suit the real defendants in interest, in this claim for a double portion, or after the vesting of the legacy, the chance of a descent of a portion of it to them, have all been taken away by the bond, and by the wording of the condition, the payment of the money therein being made absolute, and any right to inherit on the death of their half-sister taken away from them, and the amount made payable too at a day, earlier than a contingency as to time under the will might have permitted it to be done. The benefit is decidedly with the bond.

"It is argued here, that the opinion of Lord BROUGHAM in the case of Wharton *v.* The Earl of Durham, 3 *Mylne & Keen* 479, referred to in the note to 2 *Story's Eq.*, § 1111, must lead to a different view of the present case. The report of that case is not within our reach, so that we can examine it; but in 1 *Rop. on Leg.* 374, there is found a fuller statement of the facts, which show the differences to have been much more marked than in our case. The same cause, however, was afterwards reversed in the House of Lords, 3 *Cl. & Fin.* 146, and if this reversal be correct, it is certainly, under the facts there appearing, very strongly in favour of the views we have already suggested. 2 *Williams on Executors* 1144, and the cases there cited in note *k*, show the distinction between the ademption of legacies given as portions, and that of the satisfaction of debts by legacies, and recognising the decision in the House of Lords, in Durham *v.* Wharton, as settling the rule, even when there are distinct differences between the portion and the settlement or advancement. The argument was also pressed upon us, and sustained by many authorities, founded on the effect of the clause in the will providing for the payment of testator's just debts; but we cannot discover that this has any application to the legal point now at issue. Such a clause is important, where there is a question as in the

[Miner *et ux. v.* Atherton's Executor.]

cited authorities, between an existing debt of the testator at the time of the making of a will, and the legacy given by the will, where slight circumstances will make the exception, 2 *Story's Eq.* § 1122; but here there is nothing of this kind.

" Again, it is argued, that the legacy and bond are not *ejusdem generis*, because the money in the bond is made payable to a trustee. It is, however, payable to him for the use of the *cestui que trust*, who would be entitled to demand the payment of the money on her becoming of age; and the mere fact, that in giving a bond to a minor child the name of a trustee was introduced, to provide for a contingency in case of her death, and the disposition of the proceeds afterwards, will not in any way affect the present question. The bond makes it her money.

" In a large number of the cases we have referred to, and in many others found in the books, where questions of satisfaction or ademption have arisen, particularly where money due by virtue of settlements have come before the courts, and legacies, the former are generally held in the name of trustees, and yet we have found no distinction taken on this ground, because the trustee was the nominal party in the one, and the *cestui que trust* the direct party in the other. As trusts are now regarded, it would be a distinction without a difference. In Hartopp *v.* Hartopp, and Durham *v.* Wharton, above cited, the *settlements* by which the legacies were held to be adeemed, were in the names of trustees; so may it also be found in other cases. See also Carver *v.* Bowles, cited 1 *Rop.* 374, where the settlement adeeming the legacy was in the name of a trustee, and the provisions of the trust in such settlement were for the benefit of the daughter, her husband, and the children of the marriage, while the legacy, which was held adeemed thereby, was for the benefit of the daughter and her children generally. The cases in the books are very numerous, but it is unnecessary to refer to more of them.

" Upon consideration of the matter appearing in the case stated, it would seem to us, from the special expressions in the will, showing that the testator, considering his daughter otherwise provided for, gave her, as the whole portion of his own estate and property which he intended for her, the sum of $1400, payable one year after his decease, and when he afterwards gave, what, for the reason we have stated above, we must consider a voluntary bond or settlement, providing for the payment to her of the present sum of $30 per annum, and this same amount of $1400 in one year after his decease, with such very slight differences between the times of payment and appropriation, no intention to the contrary appearing in the papers, that this latter bond, as a settlement or advancement, was an ademption and satisfaction of the legacy under the will, and that the plaintiff cannot recover here. Judgment is therefore entered for the defendant."

[Miner *et ux. v.* Atherton's Executor.]

The plaintiffs, thereupon, sued out this writ, and here assigned such judgment for error.

*McClintock, C. E. Wright*, and *S. Woodward*, for the plaintiffs in error, cited Byrne *v.* Byrne, 3 *S. & R.* 59; Swoope's Appeal, 3 *Casey* 61; Mulheran *v.* Gillespie, 12 *Wend.* 349; Strong *v.* Williams, 12 *Mass.* 391; Williams *v.* Crary, 4 *Wend.* 443; Clark *v.* Bogardus, 12 *Id.* 65; 2 *Story's Eq. Jur.*, p. 513.

*Dana* and *Denison*, for the defendant in error, cited Booker *v.* Allen, 2 *Russ. & M.* 270; 2 *Mylne & Cr.* 359; *Ward on Legacies* 250, 261, 265; 1 *P. Wms.* 616; 1 *Ves.* 262; 18 *Id.* 140; 2 *Williams on Executors* 1144; 2 *Roper on Legacies* 68; 5 *Mylne & Cr.* 29; Debeze *v.* Mann, 1 *Cox* 346; Trimmer *v.* Bayne, 7 *Ves.* 508.

The opinion of the court was delivered by

READ, J.—A legacy by a father to a child is understood as a portion, because it is a provision by a parent for his child. If the father afterwards advances a portion for that child, it will be an ademption of that legacy, in whole or in part, as the advancements are larger, or equal to, or less, than the testamentary portion. And this may be the case, although there may be a wide difference between the limitations of the portion under the will, and the limitations of the portion under the settlement: Lord Durham *v.* Wharton, 3 *Clark & Finelly* 146. And since the decision of Thynne *v.* Glengall, 2 *House of Lords Cases* 131, that a gift of a whole or part of a residue may be a satisfaction of a portion altogether, or *pro tanto*, according to the amount, it has been decided by the full Court of Appeals, in Montefiore *v.* Gusdalla, 29 *Law T.* (*Ch.*) 65, on the 25th November 1859, that there may be an ademption of a residuary bequest. Lord Justice TURNER, in the last case, says, "In order to raise this question, it was necessary for him, in the first place, to establish that there could be an ademption of a residuary bequest. The argument was therefore first directed to this point, and it was contended, that all doubt on this subject was removed by the decision of Thynne *v.* Earl of Glengall, the argument being that satisfaction and ademption were on the same footing in this court, by means of the doctrine against double portions, a doctrine which dated from very early times. He thought that the principle was the same in both cases: namely, that a parent did not intend to perform the duty twice of providing for his child."

It is true, that this presumption may be rebutted or confirmed in all cases, by the application of parol evidence of a different intention by the testator, and where evidence is admissible for

that purpose, counter evidence is also admissible.  The effect of ademption is well and accurately stated by Lord KINGSDOWN, in the case of Hopwood *v.* Hopwood, decided on the 10th August, 1859, by the House of Lords, 5 *Jur.* (*N. S.*) 897, 900.  Lord KINGS-DOWN says, " At the hearing of this case, I was under the impression that a ·settlement made by a parent on a child would not operate as a satisfaction or ademption of a portion given by a previous will, unless and until the portion provided by the settlement was actually paid; and that therefore, when, as in this case, the settlement was by covenant to pay at the testator's death, both the covenant and the legacy were alike in existence during the testator's life, and that the legacy would not be satisfied or adeemed until his death.  If this view had been correct, the testator, by his second codicil, would have properly spoken of the £5000 given by his will as a subsisting legacy, and it would not have affected the construction of the instrument if he had expressly confirmed it; he would have confirmed it only subject to its liability to be applied in satisfaction of the covenant.  But upon further consideration, and on examination of the cases, I am satisfied that this view cannot be maintained, either upon principle or authority.  The principle seems to be, that when a parent has given a portion by a will, and afterwards pays or secures the same portion by a settlement, the legacy is from that moment gone, and the will is to be read as if that bequest had been expunged from it.  The language of Lord COTTENHAM, in Powys *v.* Mansfield, 3 *M. & Cr.* 359, on this point, is, I think, quite borne out by the cases.  ' The codicil,' he says, ' can only act upon the will as it existed at the time; and at the time the legacy revoked, adeemed, or satisfied, formed no part of it.' Then as to the settlement being equivalent to payment; when the father has provided for the child in a different form, the portion which he intends him to take, he has as much indicated an intention that he should not also take the legacy, as if he had paid the portion to trustees.  It is not merely, that the child shall not take both—he has no option which he shall take.  The father is held to have substituted the provision by deed for the provision by will, and from that time the legacy is at an end." " It is sufficient if the testator has done· that which in the opinion of the court shows an intention that it should not be paid.  It can hardly make any difference whether the testator pays or secures to be paid the amount of the portion.  In the cases found in the books, the term ' advancement' is generally used, and I cannot find that any distinction has been taken between payment and securing to be paid."

The general doctrine upon the subject of ademption is succinctly stated by Justice WOODWARD, in Swoope's Appeal in 3

[Miner *et ux. v.* Atherton's Executor.]

*Casey* 61, and recent examples of its application are to be found in the cases of Ferris *v.* Goodbrun, 4 *Jurist* (*N. S.*) 847, before V. C. Wood, and Schofield *v.* Heap, *Id.* 1067, before the Master of the Rolls.

In the present case, there is no doubt on the face of the will, that the legacy to his daughter is a portion, and it seems equally clear that the bond of the 20th August 1849, given by the testator, with two sureties, to a trustee for his child, then a minor, securing the payment of exactly the same amount, within one year after his decease, with interest from its date, payable in his lifetime, and until its payment by his legal representatives, is a substitution for the provision in the will, and, of course, that the legacy is adeemed. No parol evidence was offered to explain or rebut this presumption, and the case stands simply on the will and the bond. The learned judge was therefore right in entering judgment for the defendant on the case stated.

Judgment affirmed.