[PHILADELPHIA, MAY 8TH, 1839.]

## LENTZ and Another *against* HERTZOG and Others.

#### IN ERROR.

In 1811, I. J. with M. B. his wife, conveyed certain real estate (the property of the wife,) to a trustee, in trust, that M. B. might receive the rents and profits duing her life, and after her death then as to a certain messuage, &c. for the use of M. Y., a daughter of M. B., her heirs and assigns; and as for the rest and residue of the estates, to the use of F. L., a son of M. B., charged with the payment of $3000 each, to A. H. and S. G., daughters of M. B.; and with an annuity of $100 per annum to M. Y. during her life. In 1813, F. L. conveyed to I. J. the estates settled upon him by the deed of 1811, charged with the said sums and annuity. In 1818, the several children in whose favour the said sums and annuity were settled, acknowledged by deed to have received full satisfaction therefor from I. J.; and the trustee re-conveyed to I. J., and M. B. his wife, her heirs and assigns forever. In 1824, I. J., and M. B. his wife, conveyed a certain messuage and lot of ground (which had been purchased with the proper money of M. B.,) to a trustee, in trust, to permit the grantors to take the rents and profits during their lives, &c., and on the death of the survivor, to convey such parts of the premises as should be undisposed of, to such person or persons as should then be the heirs and legal representatives of the said M. B., and in such parts, shares, and proportions, as such person or persons should be entitled to, according to the laws of Pennsylvania in case of intestacy: *Held,* that the payments to the several children mentioned in the deed of 1811, were to be considered as advancements, and that under the last mentioned clause in the deed of 1824, the children so advanced were not entitled to distributive shares of the real estate therein mentioned, until a child not provided for in the deed of 1811, had received an equal share of the estate.

THIS was a writ of error to the District Court for the City and County of Philadelphia.

In the Court below, Peter Hertzog and Ann his wife, in right of the said Ann, and Thomas Graham and Sarah his wife, in right of the said Sarah, brought an action of partition to June term, 1835, against Francis Lasher and Maria Young, who survived her husband Peter Young, and Henry Lentz and Maria Barbara his wife, in right of the said Maria Barbara; to obtain partition of a certain three-story brick messuage and lot of ground, situate on the west side of Delaware Second street, between Browne street and Poplar lane, in the Northern Liberties, and county of Philadelphia, containing in breadth north and south 20 feet, and in length or depth 230 feet more or less, to St. John street; which the plaintiffs averred that they and the defendants held together and undivided.

The defendants, Henry Lentz, and Maria Barbara, his wife, pleaded *non tenent insimul.* Judgment was obtained by default against the other defendants.

The issue on the plea of Lentz and wife, came on for trial before PETTIT, (President,) on the 10th of February, 1837, when the jury rendered a special verdict finding the following facts:

On the 3d of October, 1811, Isaac Johnson and Maria Barbara his wife, by indenture of that date, granted and conveyed certain real estate, the property of the said Maria Barbara, unto Robert Whitehead, in trust, for the sole and separate use of the said Maria Barbara, for and during her natural life, so that she, notwithstanding her coverture, might receive the rents, issues and profits thereof to her sole and separate use; and from and immediately after her decease, then as to a certain messuage and lot of ground therein described, for the use of Maria C. Young, a daughter of the said Maria Barbara, her heirs and assigns forever; and, as for the rest, residue and remainder of the estates, &c. for the only proper use and behoof of Francis Lasher, a son of the said Maria Barbara, his heirs and assigns forever; under and subject, and charged and chargeable nevertheless, as in the nature of a mortgage, with the payment of the sum of three thousand dollars to Ann Hertzog, a daughter of the said Maria Barbara, her executors, administrators and assigns, within one year after the decease of the said Maria Barbara; and also charged in like manner with the payment of a like sum of three thousand dollars unto Sarah Graham, another daughter of the said Maria Barbara, her executors, administrators and assigns, within one year next after the decease of the said Maria Barbara; and also charged with the payment of an annuity or sum of one hundred dollars per annum unto the said Maria C. Young, during all the term of the natural life of the said Maria, and to commence immediately on the decease of the said Maria Barbara.

By indenture dated the 22d of March, 1813, the said Francis Lasher granted and conveyed to Isaac Johnson for the consideration of ten thousand dollars, all the estates which had been settled upon him by the deed before mentioned, under and subject as the same was made by the above mentioned deed; and it was therein recited that on the 31st of July, 1810, he, the said Francis Lasher had granted and conveyed the lot and messuage situate on the southwest corner of Second and Noble streets, to his sister Maria C. Young, in fee.

By indenture made the 31st day of March, 1818, between Thomas Graham and Sarah his wife, Peter Hertzog and Ann his wife, and Maria C. Young, (they the said Sarah, Ann and Maria C. Young, being daughters of Maria Barbara Johnson, wife of Isaac Johnson,) of the one part, Robert Whitehead of the second part, and Isaac

Johnson and Maria Barbara his wife, of the third part; the said Thomas Graham and Sarah his wife, and Peter Hertzog and Ann his wife, respectively acknowledged to have received full satisfaction from the said Isaac Johnson and wife, of the aforesaid two several sums of three thousand dollars, charged in manner aforesaid; and Maria C. Young likewise acknowledged to have received from the said Isaac Johnson and wife, full satisfaction for the said annuity or sum of one hundred dollars per annum; and by the said deed the said Robert Whitehead re-conveyed all the estate, &c. to Isaac Johnson and wife, her heirs and assigns forever.

By indenture dated the 18th of October, 1824, the said Isaac Johnson and Barbara his wife, conveyed to Peter Hertzog, in fee, the premises mentioned in the declaration in this suit, (and which had been purchased with the proper money of the said Maria Barbara,) in trust, to permit and suffer the grantors to take the rents and profits during their joint lives; and if the said Isaac Johnson should survive, to permit him to take the rents and profits during his life; with the same provision in case the said Maria Barbara should survive; with a power also to the said Maria Barbara to grant and convey the premises either by absolute sale or by way of mortgage; and as respects such parts of the premises as should be undisposed of at the death of the survivor, then in trust to convey the same " to such person or persons as shall, or may then be the heirs and legal representatives of the said Maria Barbara, and in such parts, shares and proportions as such person and persons shall be entitled to, according to the laws of Pennsylvania in cases of intestacy."

The said Isaac Johnson and Maria Barbara were both dead at the commencement of the suit. No alteration was made in the trusts of the last mentioned deed. The said Maria Barbara died intestate, and without having made any conveyance or disposition of the estate, leaving the following children, viz.: Francis Lasher, Maria C. Young, Sarah Graham, Ann Hertzog, and Maria Barbara Lentz, who were her heirs and legal representatives under the intestate laws of Pennsylvania.

Upon this special verdict, the District Court, after argument, directed judgment to be entered in favour of the plaintiffs.

The defendants then took this writ of error, and assigned the following exceptions.

" 1. That the judge erred in directing judgment to be entered for the plaintiff, because the deed of trust dated the 18th of October, 1824, directs that the estate demanded in this suit shall be conveyed to such person or persons as shall and may (at the death of Isaac Johnson and wife,) be the heirs and legal representatives of Maria Barbara Johnson, and in such parts, shares, and proportions as such

(Lentz *v.* Hertzog.)

person or persons shall be entitled to, according to the laws of Pennsylvania in case of intestacy.

2. Because each of the children of the said Maria Barbara Johnson (except Maria B. Lentz,) having received a portion of the mother's estate in her lifetime, they are not by the law of Pennsylvania in case of intestacy, entitled to receive a portion of the house and lot claimed in this suit, until Maria Barbara Lentz shall have received a sum or portion of her mother's estate, equal to the amount received by her brother and sisters."

Mr. *Hopkins* argued for the plaintiffs in error;

Mr. *Keemlé,* for the defendants in error.

The opinion of the Court was delivered by

ROGERS, J.—The 9th section of the act of the 19th of April, 1794, declares, that " In case any child shall have any estate, by settlement of the intestate, in his or her lifetime, by portion or portions equal to the share which shall be divided and allotted to the other children and other descendants, whether the same be by land or personal estate, such person shall have no share of the estate of which the said person died seized or possessed; and in case any child shall have any estate by settlement from the intestate, or shall have been advanced by the said intestate in his or her lifetime, whether the said portion or advancement be in real or personal property, but not equal to the share which will be due to the other children or descendants, then so much of the surplusage of the said estate of the said intestate shall be distributed to such child or children, as shall make the estate of all the said children or descendants to be equal." A provision somewhat similar is incorporated into the act of the 3d April, 1833. The act is founded on a principle of equity, and was intended to produce equality among all the branches of the family. The law does what it is supposed the parent would have done, had he thought proper to transmit his property by will. If, therefore, the mother Maria Barbara had died intestate as to this property, it will not admit of argument, that the portion or advancement secured to the other children by the deed of the 3d October, 1811, must be brought into hotchpot, before they could claim a distributive share of the part in respect to which she died intestate. The maintaining and education of a child, or the gift of money, without a view to a portion or settlement in life, is not deemed an advancement. The intention of the donor enters into the consideration of the gift; and whether it be a gift out and out, or a portion or advancement, may depend on circumstances; for when a contrary intention appears it will not be deemed such. And this is supposed to be, the case when small sums of money, of which no account is

taken, are given by a parent to his child, or when money is advanced for his education and maintenance. But even in these cases it may be otherwise, where circumstances exist which clearly indicate a contrary intention. But where a sum of money, or property of greater value is given to one child, charged with the payment of a sum of money to other children, there is no reason to say that this must not be taken as an advancement, portion or settlement, within the meaning of the act. And this is the case here. It can make no difference whether the child to whom the portion is given, is at the time married and settled in life, or is about to enter into that state. If it is intended as a provision or portion of his father's estate in anticipation, he must account for its value before he can entitle himself to a distributive share of the estate which remains of his father at his death. It is said in *Swinburne*, 217, that the advancement that will exclude a child must be by the father, and not by any other. And this is true, in the sense there used, for the advancement must be made by the father, to exclude the son from participating in the father's estate. A gift proceeding from other than the father, is placed by law on the same ground as a fortune acquired by the skill and industry of the child, and this it is not pretended he is bound to bring into hotchpot. The mother's estate is governed by the same rules as the estate coming from the father, as is manifest from the reason of the thing and the act itself, which has reference in express words to the estate of the mother.

And this leads to the construction of the deed of the 18th October, 1824, by Johnson and wife to Hertzog, and particularly that part of it in which it is declared that the trustees shall grant and convey the said premises, or such parts thereof as shall remain unsold and undisposed of, " to such person or persons as shall and may then (to wit, at the death of the said Maria Barbara and Isaac Johnson,) be the heirs and legal representatives of the said Maria Barbara; and in such parts, shares and proportions, as such person or persons shall be entitled to according to the laws of Pennsylvania in cases of intestacy." In order to designate the persons who are to take under this description in the deed, we must resort to the laws of intestacy, which give it to the children, and the representatives of a deceased child or children, *per stirpes*, and not *per capita*. And where can we draw the line of distinction ? If this be necessary in the one case, why not in the other, especially when the construction produces equality. The grantor says, they shall have it in such parts, shares and proportions as such person or persons shall be entitled to, according to the intestate laws ; or in other words, in case she does not dispose of it in her lifetime, the property is to be distributed in the same manner, and in the same proportions, as if she had died intestate. If it had been intended that they should take an equal share of the land, as tenants in common, it is difficult to imagine why this language was used. But on the supposition that the chil-

(Lentz *v.* Hertzog.)

dren who were equally dear to her, were to be put on an equal footing at her death, it may be readily explained. There may have been reasons which made an advance to one or more children at the time, perfectly proper, which did not apply to another. But this reason may have ceased to exist, and it is by no means inconsistent with the idea that the parent intended to place all her children on perfectly equal grounds at her death. That this may have been the case, is probable; and no reason has been given why one or more children should be so greatly preferred to another in the distribution of the estate. The Court leans to that construction which produces equality among children; the law, which is based upon equality, applies equally in this state to real and personal property.

This view of the case, makes it immaterial whether the estate was executory or executed; whether the words "heirs and legal representatives," were words of purchase or limitation; or whether the estate to the heirs and legal representatives, was an estate for life or in fee. The Court are of the opinion, that Maria Barbara Lentz is entitled to receive the sum of three thousand dollars, &c. or other sum which may be hereafter ascertained, to make her equal to her brothers and sisters, before division of the estate.

Judgment reversed, and judgment for the defendant.