| 83      89|
| 33 SC ³523|

## Storey's Appeal.   Boyd's Appeal.

1. D. held two judgments against A., amounting to $7000. A., at the request of D., for the expressed consideration of $7000, conveyed certain land to his own children, who were grandchildren of D., and thereupon the judgments were satisfied. *Held*, that this provision by the grandfather for his grand-daughters was, primâ facie, an advancement under the 16th section of the Act of April 8th 1833, and there having been affirmative testimony before an auditor that it was the intention of the grandfather that the land so conveyed should be considered an advancement, the auditor could not upturn the adjust-ment and inquire into the validity or consideration of the judgments.

2. C. gave a note under seal to D. in 1842. In 1865, after a conversation in which both parties treated the note as if valueless by lapse of time, C. handed it to D., who destroyed it. After the death of D., C., who was his administrator, filed his account, and an effort was made by the heirs of D. to charge him with the amount of the note. *Held*, that it was too late.

3. The provisions of the 16th sect. of the Act of the 8th of April 1833, relating to advancements, apply not only to children but to grandchildren who have been advanced, where the heirs are of the same degree and take *per capita*.

4. Where real estate is conveyed by a father to a child the legal pre-sumption is that it was intended to be an advancement, which is greatly strengthened when the value of the land bears any considerable proportion to the father's whole estate, and to overcome this presumption there must be proof of distinct explanatory facts.

5. In 1843, C. conveyed to his niece certain land, the consideration for which was a sum due by C. to D., who was the niece's grandfather. The niece was a child and orphan and became a member of C.'s family, where she was reared and educated. When the conveyance was made D. told C. " it would help to support and educate her," and said, " he was to pay C. for her raising." C. maintained the niece from infancy to womanhood and the estate conveyed to her remained untouched. Its value was about one-third of what she was entitled to from her grandfather's estate. *Held* (reversing the court below), that this was not a gift but an advancement.

6. Where a grandfather gave to his grandson to enable him to engage in a permanent business a sum of money equal to two-thirds of the grandson's share in the grandfather's estate, and nothing was said or done at the time the money was transferred or afterwards, to clearly indicate what was the inten-tion of the donor, the purpose to which the money was to be devoted, and its amount, were enough to create an implication that the gift was intended as an advancement.

November 14th 1876. Before AGNEW, C. J., SHARSWOOD, GOR-DON, PAXSON and WOODWARD, JJ. WILLIAMS and MERCUR, JJ., absent.

Certiorari to the Orphans' Court of *Butler county :* Of October and November Term 1875, Nos. 216 and 253.

These were the appeals of Ada V. Storey and Anna L. Adams, and Julia E. J. Boyd, from the decree of the Orphans' Court, making distribution of the estate of Oliver David, deceased.

Oliver David died intestate at Butler, Pennsylvania, on the 5th day of November 1871, at the advanced age of eighty-three years. His estate, valued at about $90,000, consisted entirely of govern-ment bonds and other interest-bearing securities, with the exception of a small farm in Ohio of inconsiderable value.

[Storey's Appeal.]

A widow survived the intestate, and his heirs-at-law were ten grandchildren, the children of three daughters, who had all died during Mr. David's lifetime.

One of these deceased daughters married James Campbell, the issue of which marriage were six of the heirs; William O., T. Chalmers, J. Thompson, Howard J., Margaret A. and Clara B. Campbell.

A second daughter married W. C. Adams, of whom were born Ada V. Adams, now Ada V. Storey, and Anna Lanah Adams, two of the appellants. Lauretta Campbell, now Lauretta Thompson, and Julia E. J. Boyd, the other appellant, were children of a third daughter who was married first to William Campbell and subsequently to Henry Boyd.

Letters of administration upon the estate of the intestate were granted to James Campbell, father of six of the grandchildren, whose relations with the intestate had been of an intimate and confidential character and who had transacted much of his business for him.

On the same day letters of administration were granted, and previous to the granting of them, Mr. Campbell, with the written consent of all the heirs except Julia Boyd, purchased the interest of the widow in the estate for $28,467, with funds realized from the sale of government bonds then in his possession.

This purchase was declaredly made for the benefit of the heirs-at-law and a profit of $683 was derived therefrom.

In November 1872 the administrator filed his first and partial account, to which a large number of exceptions were taken on behalf of Ada V. Storey, Anna L. Adams and Julia Boyd.

Hon. James Bredin, now one of the judges of the Common Pleas of Butler county, was appointed by the court to examine the account, report upon the exceptions and make distribution.

The auditor overruled all but one of the exceptions, and Hawkins, J., of the Orphans' Court of Allegheny county, after argument, approved the auditor's findings.

From this decree two appeals were taken:—

The Adams children, Mrs. Ada V. Storey and Anna Lanah Adams, appealed, because the court decided that they had each been advanced $3500 on their shares by a farm conveyed to them in 1869 by their father, Major W. C. Adams, at the instance of Oliver David, for the consideration of $7000.

Oliver David, in 1869, had on the records of Butler county a judgment in the penal sum of $12,000 against W. C. Adams, his son-in-law. Adams wanted it satisfied; Mr. David declined, saying he intended the judgment, which was a good lien on a valuable farm of Adams in Butler county, for the (Adams) girls. Mr. David, at or about the early part of 1869, so far carried out this idea of his as to prepare and execute an assignment of the judgment, reciting the amount of it at $7000, to J. D. McJunkin, Esq., in trust

for the Adams children, specifying in the assignment that it was to be an advancement to the said Ada and Anna Lanah, and to be accounted for by them in the distribution of his estate. This paper was handed to Mr. David's counsel, John M. Thompson, Esq., of Butler, and was fully proven by him, but not produced.

Shortly afterwards, this paper and arrangement of Mr. David's not being known to Major Adams, he (Adams) renewed his request to Mr. David to satisfy the judgment. Mr. David still refused, but offered to do so if Adams would deed the land to the girls. This at last Adams did, the consideration being the judgment. The consideration expressed in the deed was $7000, and in the body of the deed was stated to have been paid by Oliver David for the use and benefit of Ada V. Storey and Anna Lanah Adams, and the receipt at the foot of the deed was, "received of the above-named Oliver David for the use of said Ada V. Storey and Anna Lanah. Adams, the sum of $7000, consideration money," &c.

Julia Boyd appealed.

First. Because the auditor refused to charge the accountant with a note under seal of about $5300, dated in 1842, in favor of Oliver David.

In 1842 James Campbell bought a store from Mr. David and gave him a note for some $5000, which it appeared was never paid and of which no mention was made in the account of the administrator, and Julia Boyd excepted thereto and asked that he should be charged with the amount of the note.

In reference to this note the auditor reported,

"This exception the auditor understands to refer to what the accountant designates as the 'store' note or note given by James Campbell to Oliver David for purchase-money of store bought from him. The note, the accountant believes, was under seal, given in 1842 or about that time; does not know how much he paid on it, but Mr. David stopped him, said he 'did not want any more on it;' finally, some six years before his death and since his return to Butler, accountant spoke to him about it, and said 'you have my note, it is dead;' he said, 'yes, it is of no account,' and gave the note to accountant, saying, 'you may do as you please with it,' and accountant then burnt it. If the note was under seal, more than twenty years had elapsed since it was given and accountant swears it was dead. There is no evidence going to contradict these allegations, and the exception is, therefore, overruled."

Second. Because the auditor refused to charge as an advancement against Mrs. Lauretta Thompson the sum of $2000, the proceeds of a farm conveyed to her in 1843–1844, under the following circumstances: Mr. Campbell owed Mr. David and proposed giving him a farm in Middlesex township, Butler county, Pa., in payment; the farm was valued at $2000. Mrs. Lauretta Thompson was born

in 1835. Her father, a brother of James Campbell, had died when she was an infant, and her mother, a daughter of Oliver David, died before the year 1843. Lauretta and her mother, after the death of Lauretta's father, had resided with Oliver David. Lauretta's mother on her death-bed requested Mr. James Campbell to take her and raise her in his family, which, it appears, he cheerfully did.

When Mr. Campbell was paying Mr. David the $2000 he owed him, by the Middlesex property, Mr. David directed the deed to be made to Lauretta Campbell, saying, "It would help to raise and educate her," or words to that effect.

The widow David testified that Mr. David had told her he had given Lauretta a farm (the Middlesex township farm); and shortly after Lauretta's mother's death also told her that he was to pay James Campbell for her raising.

The auditor found that at that time Lauretta was of tender age, helpless and dependent; that Mr. David was *in loco parentis*, charged by law with her maintenance and education; that Mr. Campbell, who did support and educate her, might, had he concluded to have a guardian appointed, have disposed of the farm; and that so doing would have been but a discharge to that extent of Mr. David's obligation to maintain and educate her; that the fact that the farm was preserved in tact for Lauretta until her marriage, "was owing to Mr. Campbell's generous treatment of his brother's orphan child," and the amount she received therefrom would seem to be rather a gift from Mr. Campbell than an advancement from Mr. David; and that the circumstances of the case were sufficient to overcome any legal presumption that Mr. David intended this as an advanced portion of his estate.

Third. Because the auditor refused to charge J. Thompson Campbell with $4000 received by him in the year 1863, from Oliver David, to embark in business with, and which sum the auditor and court treated as a gift.

J. Thompson Campbell, then the second son of James Campbell, before his majority, had commenced clerking in a store, in Allegheny city. His business inclinations attracted the attention of his grandfather, Mr. David, who, as the testimony showed, took more interest in him than in any other of the Campbell children, probably, as Mr. James Campbell testified, because of Thompson Campbell following the same business Mr. David had, and being very devoted to business from his youth.

Mr. David desired to see young Thompson Campbell in business for himself, and Thompson's father was apprised by Mr. David that he had some money for Thompson. Shortly afterwards an opportunity of Thompson's going into a store in Allegheny city presented itself, and Mr. David was informed of it, and gave his father, for him, $4000, laying on him, Mr. James Campbell, the injunction "that he did not want any one to know it."

Thompson went into business with the money, and at the end of three years lost half his capital and his time. Mr. David, when told of his ill-success, said, "Well, it's gone; it can't be helped."

The auditor found there was nothing said at the time this money was given, to indicate that Mr. David intended it as an advanced portion, and that Mrs. Belle Wells, a sister of Mr. David's first wife, proves the transaction to be a gift.

Mrs. Wells testified: "I do not know exactly how much Mr. David gave W. O. Campbell; I know he kept no account of it, and gave it to him as a gift; he did not tell me what he gave him, but it was some $2000, or over that sum; don't know how much over; I think he gave Chalmers $100 at one time; I think he said he gave Thompson Campbell $4000; he gave Howard none that I know of, nor any to Mrs. McJunkin, nor to Clara."

Fourth. Because Miss Boyd was not permitted to participate in the distribution of the $683 profit, arising from the purchase of the widow's share in the estate, to which purchase, as before stated, Miss Boyd had refused to give her assent.

All of the appellants alleged that: "The court erred in not deciding that the statute of advancements does not apply in this case because the heirs are all of the same degree and grandchildren, and take *per capita*."

*Mitchell & Piersol*, for appellant, Julia Boyd; *McCandless* and *Greer*, for appellants, Ada V. Storey and Anna L. Adams.—The ten grandchildren, all the children of the intestate having died in his lifetime, take the estate under the intestate law of the state *per capita*, each an equal share in their own right, and not *per stirpes* or by representation. It is contended that the statute of advancements (Act of 8th of April 1833, Pamph. L. 249) does not apply to grandchildren when the heirs are all in the same degree. The words of the statute are, "If any child of an intestate," &c., which mean that the act only applies the principle of advancement to children, and consequently excludes grandchildren from its operation. As well might the statute be made to apply to collateral heirs (brothers and sisters, for instance).

In Eshelman's Appeal, 24 P. F. Smith 42, it is clearly indicated that the principle will not be applied to grandchildren where they take *per capita* and are heirs of the same degree. The principle was carried to the extreme limit in that case, where a grandchild was held to have been advanced because he took *per stirpes* in his father's right.

The Act of the 8th April 1833, is derived from the English statute 22 & 23 Car. 2, c. 10, relating to advancements and settlements: 24 P. F. Smith 46. The words in both statutes are, "If any child," &c., shall have been advanced. In England it is held that grandchildren and great-grandchildren do not take as children:

[Storey's Appeal.]

Boyle *v.* Hamilton, 4 Vesey Jr. 437 ; Marsh *v.* Hogue, 1 Edw. 174. See also note " A," 4 Vesey Jr. 437.

Whether a conveyance of property is to be considered as an advanced portion or a gift, partly one and partly the other, depends on the intention of the grantor at the time the gift is made, and of this his declarations at the time are evidence : Christy's Appeal, 1 Grant 369 ; Miller's Appeal, 4 Wright 59 ; Dutche's Appeal, 7 P. F. Smith 464 ; 6 Wharton 370.

In making the conveyance to the Adams children, there were such declarations of intention as were sufficient to overturn the presumption that the consideration of the deed was an advancement to them. The expressions used by the intestate in relation to the farm deeded to Mrs. Lauretta Thompson do not overthrow the presumption of law that it was an advancement, this being a presumption of law: Dutche's Appeal, 7 P. F. Smith 464. It was error to base any conclusion on the idea that Mr. David stood *in loco parentis* to Lauretta, and such assumed relation should not operate to relieve her from being charged with the land as an advancement. The $4000 received by Thompson Campbell should have been treated as an advancement.

*J. D. McJunkin* and *W. S. Purviance,* for James Campbell, the accountant, and Mrs. Lauretta Thompson and J. Thompson Campbell, two of the heirs.—Eshelman's Appeal does not support the contention of appellants. That case simply decided that a grandchild, there being a child also in existence, takes his share subject not only to the advancement made to its father, but also to any advancement made by its grandparent to it after its father's death. And this court could not go so far as this under the literal reading of the statute of 1833, and did not thus decide until it first held that the statute was not to be literally construed, but that the word " child" in the statute covered and included grandchildren, and might and should be so construed, and that the fact that heirs were of different degrees of consanguinity to the intestate would not and should not prevent the application of the equitable principle. In the present case all the heirs are in an equal degree of consanguinity to their ancestor. The strict reading of the Act of 1833 would apply the act only to the lineal descendants of a decedent being his children ; all the heirs in the present case are therefore one degree farther off than the literal reading of the act would contemplate. Construing, as this court does, the word " child" to include grandchild, they are brought directly within the scope and effect of the act. The gift to J. Thompson Campbell was not an advancement: Miller's Appeal, 7 Casey 337 ; Christy's Appeal, 1 Grant 369 ; Harris's Appeal, 2 Id. 304 ; Miller's Appeal, 4 Wright 60 ; Lentz *v.* Hertzog, 4 Whart. 523 ; Lawson's Appeal, 11 Harris 87.

[Storey's Appeal.]

Oliver David made the deed to Lauretta Thompson thinking he stood *in loco parentis*, and his expressions, when he made the deed and afterwards, negative the idea of an advancement.

Mr. Justice WOODWARD delivered the opinion of the court in both appeals, January 2d 1877.

## STOREY'S APPEAL.

On the 4th of March 1869, Oliver David held two judgments against W. C. Adams, the father of the appellants, amounting to about $7000. On that day a deed for 159 acres and 115 perches of land was executed by Mr. Adams to the appellants, who were grandchildren of Mr. David, and thereupon the judgments were satisfied. A provision for his granddaughters was thus made by the grandfather by the conveyance of real estate to them for which he paid. This was, primâ facie, an advancement under the 16th section of the Act of the 8th of April 1833. It was so treated by the auditor and the court below upon what is believed to have been entirely adequate evidence. In support of the presumption, there was affirmative testimony of the intention of the grandfather in the statement of John M. Thompson, that some months before the transaction was concluded, Mr. David had an assignment of the judgments prepared, with the view of transferring them to J. D. McJunkin in trust for the appellants, which was recited "to be an advancement to said Ada and Anna Lanah, and to be accounted for by them in the distribution of his estate." The land was conveyed for the expressed consideration of $7000, and the judgments were satisfied. The principle is not conceivable upon which the auditor would have been justified in upturning the adjustment and entering upon an inquiry into the validity and consideration of the judgments.

The third and fourth errors relate to details in the proceedings before the auditor, and have not been pressed in the argument.

The question raised in the fifth assignment regarding the application of the 16th section of the Act of 1833, has been fully discussed in Julia E. J. Boyd's Appeal this day decided.

> Decree affirmed, and appeal dismissed at the costs of the appellants.

## BOYD'S APPEAL.

James Campbell, administrator of Oliver David, deceased, whose account has been brought up from the Orphans' Court, was shown by the evidence before the auditor to have given a sealed note for $5300 to Mr. David in the year 1842. About the year 1865, Mr. Campbell called Mr. David's attention to it. He said: "You have my note, it is dead." Mr. David replied, "it is of no account," and adding, "you may do what you please with it," gave it to Mr.

Campbell who then destroyed it.    This was the only evidence on the subject.    The auditor and the court below refused to charge the accountant with the amount of the note, and for this the first error of the appellant has been assigned.    The conversation resulting in the destruction of the instrument was about twenty-three years after its execution.    Both parties treated it as having become valueless by lapse of time.    The creditor had the right to give it up, and it is too late now for his heirs to assert an obligation he saw fit to cancel.

In restating the account of the administrator, the auditor credited him with the amount of a note of John M. Thompson for $1998.75, with which he had charged himself by mistake, it being unpaid and subject to set-off.    To this decision an exception was taken, which the Orphans' Court dismissed.    This is the ground of the second error.    In passing upon this and some other items, the auditor added this note: " These credits not being absolute credits, but to be charged or accounted for in final account."    An inquiry into the merits of the assignment would now be premature.    The claim can await future investigation.

The third error has been assigned to the decree of the court confirming the auditor's decision in refusing to charge as an advancement to Mrs. Lauretta Thompson the sum of $2500, the proceeds of the Middlesex farm conveyed to her by James Campbell, for which Mr. David paid.    On the 5th of November 1871, Oliver David died intestate without surviving children, but leaving ten grandchildren.    Six of these grandchildren were the children of a deceased daughter who intermarried with James Campbell, the accountant.    Their names were William O., T. Chalmers, J. Thompson, Howard J., Margaret A., now Margaret A. Junkin, and Clara Bell Campbell.    Two of the grandchildren, Ada V. Adams, now Ada V. Storey, and Anna Lanah Adams, were the children of another deceased daughter, who intermarried with W. C. Adams. And the two remaining grandchildren, Lauretta Campbell, now Lauretta Thompson, and Julia E. J. Boyd, the appellant, were the children of a third deceased daughter, who intermarried first with William Campbell and afterwards with Henry Boyd.    The auditor ascertained the amount of the estate to be $65,300, and the share of each of the ten grandchildren to be $6530.    The amount for distribution, however, included $7000 charged for advancements to Mrs. Storey and Anna Lanah Adams.

At the outset, a question has been raised involving the construction of the 16th section of the Act of 8th of April 1833.    The provisions of that section in relation to advancements are limited to the case of " any child of the intestate."    The facts in Eshelman's Appeal, 24 P. F. Smith 42, were not identical with those developed here, for the decedent there had left surviving children.    But advancements had been made by the decedent to a grandson after his father's

death, and it was held that his share in the distribution of his grand-father's estate was subject to charge for those advancements. Nothing need be added to the authorities collected in that case, and nothing to the reasoning of Judge MERCUR, to prove that in construing a statute the real intention will prevail over the literal sense of the terms; that if the expression of a statute be special but the reason general, the expression will be deemed general; and that the provisions of the 16th section of the Act of 1833 apply not only to children but to grandchildren who have been advanced. It may be observed, however, that the right of grandchildren to inherit as next of kin where no children survive the decedent is derived from the same statute that creates the charge for advancements against children. They take *per capita* under the terms of the second clause of the second section of the Act of 1833. They are placed, as principal heirs, in the precise position of children, and bearing the same relation to the decedent, they are subject to the same duties and liabilities. There are stronger reasons why a grandchild should be chargeable for advancements where he inherits as next of kin than where, as in Eshelman's Appeal, he takes through a deceased parent by representation.

In 1843 or 1844, James Campbell made a deed for land in Middlesex township to Lauretta Campbell, now Mrs. Thompson, for a recited consideration of $2500. There was proof, however, and the auditor has found, that the true consideration was $2000, and consisted in the discharge by Mr. David of a debt due him from James Campbell, the grantor. Mrs. Thompson was then a child, and her parents had recently died. She became a member of the family of her uncle, James Campbell, who reared and educated her. At the time when the arrangement for the conveyance was made, Mr. David told Mr. Campbell to make the deed to Lauretta, that "it would help to support and educate her." He told Mrs. David that he had given Lauretta a farm, and shortly after the death of Mrs. Thompson's mother, he said he "was to pay James Campbell for her raising." This is all the evidence the record contains on the subject of the gift. Where real estate is conveyed by a father to a child, the legal presumption is that it is intended to be an advancement. To overbear this presumption there must be proof of distinct explanatory facts. Thus it was ruled in Dutche's Appeal, 7 P. F. Smith 461, that "a conveyance of land by a father to a child directly, or by payment of the purchase-money, and having the deed made to the child, is primâ facie an advancement; and this presumption is greatly strengthened when the value of the land bears any considerable proportion to the father's whole estate." There the value of the estate was about $48,000. The decedent had conveyed real estate in his lifetime to three of his children. The value of that conveyed to George F. Dutche was $7805; of that conveyed to Sarah R. Lewis $4780; and of that

conveyed to Rosanna R. Wendell $550. There were four children, and the distributive share of each was about $12,000. The conveyances were held to be advancements, notwithstanding evidence by one witness that the intestate had said that he intended to give a house to each of his daughters ; by another witness, who drew the deeds, that according to the best of his recollection it was meant as a gift; and by two witnesses who testified to the intestate's declarations in his last illness that he wished his property sold, and the money equally distributed among his four children. It was held that there was nothing in the case to rebut the presumption that the deeds were advancements. It has been urged that Mr. David stood by legal relation *in loco parentis* to Mrs. Thompson, and that the gift was necessary for her support and education. But he never accepted the imputed relation, and the gift was never used to carry the assumed purpose into effect. She was in fact maintained from infancy to womanhood by Mr. Campbell, and the estate conveyed to her remained untouched. Its value was $2000, nearly one-third of the distributive share to which it was eventually proved she was entitled. The proportion was significant enough to intensify the presumption that springs from a gift of land. The evidence was too vague to overthrow the presumption, and the Orphans' Court should have decreed that the conveyance was an advancement.

In the hearing before the auditor, it was shown that J. Thompson Campbell, one of the distributees, had received the sum of $4000 from his grandfather in 1865 or 1866. Alleging this to have been an advancement, the appellant asked that it should be charged against his distributive share. The auditor decided that the donor intended it to be a gift. So much of the decree below as sustained the decision of the auditor is the subject of the fourth error. When the money was received, J. Thompson Campbell employed it in establishing a mercantile business in Allegheny city. The only evidence of what occurred at or about the time when the money was delivered, was the statement of James Campbell, that Mr. David said he had some money not invested that he intended for, or intended to give Thompson. Mrs. Wells testified that Mr. David told her at one time that he had given Thompson Campbell $4000. "All questions of advancement," it was said by Sergeant, J., in Daniel King's Estate, 6 Whart. 370, "must depend on the intention of the parent in making the gift. If there be no evidence at all on the subject, then whether it was an advancement or a present may be judged of by its amount and character." Here, the money was given by the grandfather to the grandson to enable him to enter on what was designed to be the permanent business of his life. It was nearly equal in amount to two-thirds of his share in the distribution. There was no evidence of what occurred when the money was actually transferred. Indeed, it may be said that there was no evidence at all to indicate the donor's

intention.    He would have used the same words in his conversation with Mrs. Wells, whether he designed the gift to be an advancement or a present.    The purpose to which the money was to be devoted, and its amount, are enough to create the implication of an intention to treat the gift as an advancement.    In Lentz v. Hertzog, 4 Whart. 520, Judge ROGERS said: "The maintaining and education of a child, or the gift of money, without a view to a portion or a settlement in life, is not deemed an advancement.    It can make no difference whether the child to whom the portion is given, is at the time married or settled in life, or is about to enter into that state. If it is intended as a provision or portion of his father's estate in anticipation, he must account for its value before he can entitle himself to a distributive share of the estate which remained of the father at his death."    Lawson's Appeal, 11 Harris 85, relied on at the argument here, was a very different case from this.    Various witnesses testified there to repeated declarations of the father that he had "presented the property to his sons."    And it was said in the opinion of this court, that "he had made valuable presents to his married daughters, and it is reasonable to infer, that what he gave to start his sons were intended in the same manner to be gifts." Some strength is added to the view insisted on by the appellant by the fact that a gift of $2550 which Mr. David made to William O. Campbell, was accompanied by the statement that it was "a donation, and not to be counted up in the settlement of the estate." This was some evidence that he had a future adjustment of equities amongst his grandchildren in contemplation.    The gift to J. Thompson Campbell should have been treated as an advancement, and the fourth assignment of error is sustained.

There is no merit in the fifth assignment.    The appellant refused her assent to the purchase of the widow's interest.    The purchase was made by the accountant with the funds of the other distributees, and at their risk.    The appellant will receive her full share in the distribution of the decedent's estate.    The profit of $683 is justly divisible amongst the parties by the investment of whose moneys it was earned.

> The decree of the Orphans' Court is reversed; and it is ordered and adjudged that the record be remitted for re-distribution, wherein Mrs. Lauretta Thompson shall be charged with $2000, and J. Thompson Campbell shall be charged with $4000 as advancements to them, respectively; and that the costs of this appeal be paid out of the fund for distribution.