## Weaver's Appeal.

63   309
128   281

1. Advancement is always a question of intention.

2. When there is no evidence of what occurred at the time of the alleged advancement, the attendant circumstances are to be considered in determining whether it be a loan, gift or advancement.

3. Among the circumstances, the most important are, the amount as compared with the parents' estate, the number of children and the purpose of the advance.

4. It is always a presumption that a parent means to treat his children equally.

5. If his estate is large, a comparatively small sum will raise the presumption of a gift.

6. If the purpose was education, it will be presumed until rebutted, to have been in discharge of parental duty.

7. A conveyance to a child either directly or by payment of the purchase-money, and having the deed made to the child, is primâ facie an advancement.

November 16th 1869.    Before Thompson, C. J., Read, Agnew, Sharswood and Williams, JJ.

Appeal from the decree of the Orphans' Court of *Greene county :* in Isaac Weaver's estate, No. 56, to October and November Term 1869.

On the settlement of the estate of Isaac Weaver, deceased, it was ascertained that there was a balance of $5220.41 in the hands of the administrators due the estate.   J. A. J. Buchanan, Esq., was appointed auditor to ascertain advancements and make distribution.   The only contested question before the auditor was whether a sum of $1000, admitted to have been received from the decedent about fifteen years before his death by Baldwin his oldest son, was an advancement.

By the report of the auditor and the evidence accompanying it, it appeared that the decedent died October 22d 1866, and that the whole of his estate real and personal amounted to about $25,000 ; he had thirteen children, three of whom died quite young and without issue.   Baldwin remained with his father and worked for him for six years after his arrival at age.   About that time, desiring to go into business for himself, he received the $1000 from his father and purchased a farm.   Baldwin afterwards said that he had got $1000 from his father which he had put into the farm ; that afterwards he wanted more money of his father to stock his farm, when his father said that he had let him have $1000 and he must make the balance himself.   Afterwards his father wanted him to give a judgment-note for " the money he had let him have to put into the land, but Baldwin declined, saying if his father wanted the money he could make it out of the land ; nothing further had been said by his father afterwards about the money."   The widow of the decedent testified that if the decedent made a will Baldwin was to be provided for in that, if not it

[Weaver's Appeal.]

was to be deducted from his share of the estate; the decedent told his wife, about the time Baldwin got the money, that $500 was part of his share of his estate and the other $500 he was to pay to the girls.    These declarations to the wife were not in the presence of Baldwin.    A daughter got $500 from the decedent, who said when he gave it he was in the habit of taking notes in such cases from his children; no pen and ink were at hand and the note was not taken.    Another daughter got $300, and with her husband gave this receipt :—

" Received of Isaac Weaver, my wife's father, the just and lawful sum of $300.    It being intended as a part or all of my wife's share of his estate as he the said Isaac Weaver may determine hereafter, but if the said Isaac Weaver should die without a will, this receipt is to be considered as a part of my wife's share of her father's estate."

Baldwin was indebted to his father's estate on a sealed note dated November 6th 1861, for $80 payable on demand with interest.    The decedent had also declared that he had been helping Baldwin considerable and intended to help him more; he had been a good boy and labored on his premises three years before and three years after his marriage; he intended the labor Baldwin had done " to rebut" the money he let him have.

The auditor found that the $1000 was not an advancement, but a debt to the father, and as such barred by the Statute of Limitations.    He distributed the fund accordingly.    On exceptions the court, Gilmore, P. J., overruled the finding of the auditor and decided that the $1000 was an advancement.

Baldwin Weaver appealed to the Supreme Court and assigned the decree for error.

*Purman & Ritchie,* for appellants.—An advancement is an irrevocable gift by a parent in his lifetime on account of the child's share in his estate: High's Appeal, 9 Harris 287; Yundt's Appeal, 1 Id. 580.    Declarations of the parent in the absence of the child are not proof of advancement without evidence *aliunde :* Levering *v.* Rittenhouse, 4 Whart. 130 ; Haverstock *v.* Sarbach, 1 W. & S, 390; Miller's Appeal, 4 Wright 58.    The Act of April 8th 1833, § 16, Pamph. L. 319, Purd. 565, pl. 35, does not declare *what* shall constitute an advancement.    The presumption of advancement may be rebutted by proof: Dutch's Appeal, 7 P. F. Smith 465; Zeiter *v.* Zeiter, 4 Watts 214; King's Estate, 6 Whart. 373.

*R. W. Downey,* for appellees, cited Hengst's Estate, 6 Watts 87; Dutch's Appeal, *supra.*

The opinion of the court was delivered, January 3d 1870, by

SHARSWOOD, J.—Advancement is undoubtedly always a question of intention. When there is no evidence of what occurred at the time the money or other valuable was given and received, the surrounding circumstances are to be considered in determining whether it ought to be considered as a loan, a gift or an advancement. It becomes necessarily a subject of presumption. Among these surrounding circumstances the most important are the amount, as compared with the estate of the parent, and the number of the children, and the purpose for which the advance was made. It is always a natural and reasonable presumption that a parent means to treat his children equally. If his estate is large, a comparatively small sum will raise the presumption of a gift or present. "If there be no evidence at all on the subject," said Sergeant, J., in Daniel King's Estate, 6 Whart. 370, "then whether it was a present or an advancement may be judged of by its amount and character." So if it be shown that the purpose was the education of the children, it will be presumed to have been in discharge of the parental duty, until rebutted by other evidence: Riddle's Estate, 7 Harris 431.

The evidence in the case before us is very scant. No one examined as a witness was present when the money was paid. The amount was large, perhaps equal to the full share of the son in his father's estate, as valued at the time. We learn from the evidence given of subsequent declarations by the son that it was advanced to enable him to purchase a farm. No note or other security was taken. Upon this state of the evidence, what is the prima facies? Certainly, that it was an advancement. "Nothing is better settled," said Mr. Justice Strong, in Dutch's Appeal, 7 P. F. Smith 461, "than that a conveyance of land by a father to a child, either directly or by payment of the purchase-money, and having the deed made to the child is, primâ facie, an advanced portion; and the presumption is greatly strengthened when the value of the land bears any considerable proportion to the father's whole estate."

Is there anything in the evidence to rebut this primâ facie presumption, and to show that it was either a gift or a loan? Samuel Gore testified to a conversation with Isaac Weaver a short time before his death, in which he said: "Baldwin had been a good boy and labored on his premises over three years before his marriage and three years after. He said he had let him have some money at one time and intended that the labor Baldwin had done to rebut it." This evidence is too loose to change the character of the transaction from an advancement to a gift. It does not ascertain the money, and might well refer to some smaller amount, as the note of $80. It becomes still more improbable when we advert to the evidence next to be noticed, which is relied on by the appellant to show that it was a loan or debt. The appellant's

own declarations prove clearly that it was neither a gift nor the payment of a debt for wages. Hiram Estel testifies that the appellant told him—" some time after that his father came to him and wanted a judgment-note for the money he had let him have to put into the land. He (Baldwin) said no, that there was the farm, and if he wanted the money he could make it out of it." The contention is, that this shows that it was originally a loan. Does it not rather evince a desire on the father's part to convert it into a debt, but declined by the son? The father possessed no evidence of the original advance. If the son acknowledged it as a debt, and was willing that his father should make it out of the farm, why did he refuse to sign the note? It does not appear that his objection was to the form of the security. He does not so say. We must remember that all this is the appellant's own account of what occurred. It still leaves the mind in suspense. The idea of turning the advance into a loan, and then setting up the Statute of Limitations as a bar, is not entitled to much favor. There should be clear and satisfactory evidence to rebut the natural presumption growing out of the circumstances. Nor does the fact that Isaac Weaver, in making an advancement to one of his daughters, took an acknowledgment of it from her and her husband, tend to prove that this was a loan. Men are generally more careful in dealing with their sons-in-law than with their own sons, and it is an argument of little weight when it is agreed on all hands that the advance was made in this instance without taking any writing whatever to show its character.

Decree affirmed, and appeal dismissed at the costs of the appellant.