## APPEAL OF R. E. PATTERSON ET AL.

### [Estate of Robert Patterson, Deceased.]

#### FROM THE DECREE OF THE ORPHANS' COURT OF PHILA-DELPHIA COUNTY.

Argued April 11, 1889—Decided October 7, 1889.
[To be reported.]

1. In the absence of expressions clearly indicating the contrary, it will be presumed that a testator intended equality of distribution among his own children; and, as between a loan, a gift, and an advancement, the presumption is in favor of an advancement, because of its tendency towards such equality.

2. Interest is not chargeable upon an advancement during the lifetime of a testator, nor upon what was originally an indebtedness to the testator, but turned into an advancement by his will; although, for the sake of equality, interest will be charged from one year after testator's death, unless otherwise provided by the will.

3. When an account is settled embracing income, and a principal made up of cash and unconverted securities, and the shares both of income and principal are dependent upon questions as to interest upon advancements, it is the duty of the court to decide the proportions in which the shares are payable and decree distribution accordingly.

Before GREEN, CLARK, WILLIAMS, McCOLLUM and MITCHELL, JJ.

No. 256 January Term 1889, Sup. Ct.; court below, number and term not given.

On January 3, 1888, the account of Robert E. Patterson and William H. Drayton, executors and trustees under the will of Robert Patterson, deceased, was called for audit, and in the hearing subsequently had the following facts appeared:

Robert Patterson died on August 7, 1881, leaving a will by which he devised his estate to his executors, in trust to wind up the business of all the manufactories owned by him; but as the immediate suspension of the business of those concerns might be attended with loss, he authorized his trustees to continue the business of any or all of said manufactories, for such period of time as might in their judgment be advisable to secure the best

results, but directing that such period should in no event exceed the term of three years from his decease. He also directed that the proceeds of the business of such manufactories, although such proceeds might be in fact income of the business, should be treated as principal of his estate. By subsequent clauses of the will he directed that so long as his estate should remain undivided the income should be divided into as many parts as there might be, at the time of such division, survivors of his four children, Robert E. Patterson, W. H. Patterson, Susan Engle and Louisa H. Lynde, and the children or issue of his deceased daughter Mary Ann Engle, wife of General John J. Abercrombie, deceased, the children or issue of said deceased daughter to count collectively as one. The will then contained the following provision:

" Provided, however, that in computing the net income of my estate for the purpose of such division, there shall be included the current interest for the preceding six months upon the debt which shall be due to my estate by the estate of General John J. Abercrombie, which debt as now due me is hereby declared to be the sum of $13,987.56, as of January 16, 1877; and also upon the debt which shall be due my estate by Samuel Appleton, Esq., husband of my deceased granddaughter, Ernestine Abercrombie Appleton, which debt as now due me is hereby declared to be the sum of $17,153.89, as of June 8, 1870, although such interest may not have been actually received; and that the interest upon the debt due by the estate of General John J. Abercrombie shall be charged against and deducted from the share of the income of my estate which shall be apportionable and payable to the children or issue of children of my deceased daughter Mary Ann Engle Abercrombie, including therein the issue of my deceased granddaughter Ernestine Abercrombie Appleton, and that the interest upon the debt due by Samuel Appleton, Esq., shall be charged against and deducted from the share of the income of my estate which shall be apportionable and payable to the issue of my said deceased granddaughter Ernestine."

The testator then directed that " so soon as it can be done fairly and conveniently, and without interfering with the business of my manufactories, or any of them, which may not have been wound up and closed under the third article of this my

Adjudication.

will," the trustees should make partition of his estate into as many parts as there should be, at the time of such division, survivors of said four children and the issue of any deceased child, and that his trustees should hold such parts or shares upon certain trusts for said children and their issue therein specified. He then provided as follows:

"I direct that the debts due me by the estate of my son-in-law, General John J. Abercrombie, deceased, and by Samuel Appleton, Esq., respectively as aforesaid, and also any other sums charged on my books at the time of my death against my sons, daughters or sons-in-law, shall be taken into account as assets by the trustees or trustee on making partition or division of my estate as hereinbefore directed; and the said sums charged against a son shall be taken as a part of the share or shares to be set apart in the said division for or on account of such son or his issue; and the said debts of the said General John J. Abercrombie and of Samuel Appleton shall both be taken as part of the share or shares to be set apart in the said division for or on account of the issue of my said deceased daughter, Mary Ann Engle; and the said sums charged against any other daughter or her husband shall be taken as part of the share or shares to be set apart in the said divisions for or on account of such daughter or her issue."

The executors were not able to complete the closing of the accounts of the various business interests of the testator until 1887. On November 3, 1887, they filed the account now being adjudicated showing a balance on hand amounting to $1,136,602.31, of which $6,086.28 was in cash, and $21,319.73 consisted chiefly of investments in mortgages and ground-rents, made from time to time by the trustees in accordance with the provisions of the will.

The adjudication, so far as material to this report was as follows, ASHMAN, J.:

The testator died August 7, 1881, leaving a will, of which a printed copy is attached to the adjudication of the first account. At the time of said adjudication the period for the distribution of principal had not been reached. There has been delay since in this distribution, probably more than was contemplated by them, but it does not appear that this was

avoidable.   They are about to make a partition of a consider-
able portion of the estate, but cannot do this until a question
is settled as to the liability of certain shares for interest upon
indebtedness and upon advances.   It appears that in the dis-
tributions of income which from time to time have been made,
interest has been charged upon the Appleton and Abercrombie
debts, but that none has been charged upon certain advances
to other distributees.

The indebtedness of General R. E. Patterson to the estate,
at the date of the testator's death, was  .    .    $34,027 44
That of W. H. Patterson was  .  .    .    .    12,622 13
That of S. E. Snowden was  .    .    .    .    . 1,126 21

The indebtedness of the estate of General Abercrombie
amounted, with interest, less what had been paid on account,
out of the income of the share, at the date of filing the last
account, to $12,811.68+$3,533.15, or to $16,344.83.   On Au-
gust 1, 1887, crediting the share with payments on account,
the Abercrombie debt had been reduced and amounted to
$16,040.37.

The indebtedness of Samuel Appleton, with interest, less
what had been paid on account, out of the income of the
share, at the date of filing the last account, was $17,153.89+
$12,521.71, or $29,675.60.   On August 1, 1887, the amount
due, charging interest to that date and deducting what has
been paid out of income on account, was $35,244.93.

*       *       *       *       *       *       *       *

In the final division of the estate the debts due by General
Abercrombie and Mr Appleton, and the sums charged by tes-
tator against his children, were directed by the seventeenth
clause of the will to be treated as assets, and it was ordered
that the debts of Abercrombie and Appleton should be taken
as part of the share of the issue of testator's deceased daughter,
Mary Ann Engle.   In making up their account the executors
added interest to the sums due by Abercrombie and Appleton
from the dates assigned by the testator to those debts respec-
tively up to the time of his death, and thence to the period at
which the income began to accrue, to wit, one year thereafter;
and they thus fixed the principal of the indebtedness as an
asset of the estate.   This course was dictated by the very
clearly expressed thought of the testator.   He describes the

Adjudication.

sums so due as "debts," fixes their several amounts, and assigns to each its separate date. The last circumstance is conclusive against the theory of an advancement, and would compel the imposition of interest, even if the testator had not immediately afterwards required that the interest on these debts should be included as a part of the current income of his estate. It may be objected that the debtor legatees are at the mercy of the executors, who may lengthen the time during which interest is payable by delaying distribution. But the testator must have foreseen this, and evidently did not regard it as a hardship to the legatees. The language with which he begins the fifth clause, "So long as my said estate, or any portion thereof, shall be held undivided by my said trustees," and the power in the trustees to continue the business, shows that he did not look for an immediate division. During that time the accruing interest was to be added to income, so that the two legatees would receive back as distributees a part of what had been imposed upon them as debtors. The capitalization of the debts necessarily ceased at the end of the first year, because at that time the distributable income commenced to accrue.

The testator draws a sharp distinction between the sums charged against the Abercrombie and Appleton shares, and those charged against the shares of the other distributees. In every instance he calls the first "debts" and the others "sums charged." That the latter are advancements and therefore not chargeable with interest is too clear to be doubted. This is true, of course, up to the time at which distribution is presumably to be made and the advancements are presumably refunded to the estate. The estate is entitled to repayment at that time, and if repayment is delayed, interest runs through the period of delay upon the advancements. The auditing judge cannot find in this will any intent to exempt these advancements from this rule. They, as well as the debts, are to be taken into account as assets. But all assets are computed as of the date of testator's death, and the assets in question were distributable at the end of the year from the death, even if other assets were not then got into possession. By "distributable," the auditing judge means that they were apportionable, as of that date, among all the distributees, to be paid as soon as the estate should be divided. From the date of appor-

tionment, therefore, the parties advanced, being in possession of their shares, should pay interest, in order to work equality with those who were compelled to wait.

The income from time to time has been distributed in accordance with all the directions of the will. No interest has been charged, however, upon the advancements, and a further charge of such interest must now be made to the first day of August, 1887, which must also be distributed.

In accordance with the foregoing adjudication, Robert E. Patterson, W. H. Patterson and S. S. Snowden were each charged five years interest upon their several debts to the estate, and the amount thereof was awarded in equal shares of one fifth to the parties entitled under the will; the balance shown by the account, less the costs, was directed to be held by the accountants, as trustees, for the uses and purposes declared in the will, and with it they were to be charged in the next account. It was also ordered that in making a distribution of the principal there should be charged against the Abercrombie share the aggregate of the indebtedness of the estate of General Abercrombie and of Samuel Appleton, with interest, the indebtedness of Samuel Appleton, so far as that share would suffice, being first deducted from the Appleton purpart of the Abercrombie share.

Various exceptions filed to the adjudication were argued before the court in banc, and were disposed of by the following opinion, filed December 15, 1888, HANNA, P. J.:

After a careful consideration of the exceptions, the only question proper for determination at the present time arises upon the distribution of the income. Upon reading the will, it is evident the testator realized the impracticability of the settlement of his large estate, with a due regard for the best interests of those he intended to benefit, within the period of time usually contemplated by law, namely, at the expiration of one year from his death, and therefore authorized the trustees to continue the business of any of his manufactories, for a time not exceeding three years thereafter.

But it is also clear, his own opinion was that an earlier winding up and adjustment was possible. Furthermore, testator

was familiar, not alone with the details of his extensive business, but he also knew from its nature and character that the trustees would immediately upon his death be in receipt of a considerable income therefrom, which could be distributed among his beneficiaries. He accordingly directed that, so long as his estate or any portion thereof shall be held undivided by his trustees, the net income thereof shall be semi-annually divided between his surviving children, and the children or issue of a deceased daughter, in equal shares.

At the date of the will it appears that a son-in-law, then deceased, had in his lifetime become largely indebted to testator; and the husband of a deceased granddaughter, also, to a considerable amount. These sums testator directed in the division or partition of his estate should be charged to and deducted from the share to which the children and grandchildren of his deceased daughter should become entitled. But in the distribution of the income by the trustees, prior to the division or partition of his estate, he directed that, in computing the income for the purpose of such division, the trustees shall include the current interest for the preceding six months upon these debts, as if paid to them by the debtors; and, in the actual distribution then to be made, deduct the amount of interest from the share payable to the children of his deceased daughter and of his deceased granddaughter.

The will also shows that testator had, at the date of its execution, fixed or determined the amount of the debts due him, one of which at that time was long barred by the statute; that of his son-in-law being due "as of" January 16, 1877, and that of the husband of his granddaughter "as of" June 8, 1870.

It is to be observed that the testator expressly declares the amount of the indebtedness to him at the date of the will, viz., May 13, 1879. No mention is made of any charge of interest upon these sums, and no instructions to the trustees that interest should be added thereto, until the provision for the distribution of the income; and then, as already mentioned, interest for the preceding six months is to be added.

Testator died August 7, 1881, more than two years subsequent to the date of the will, and its provisions remain unaltered. At the expiration of six months from the death of testator, the first semi-annual distribution of income became

payable in accordance with the will. And then, from the construction we place upon the will, the trustees are directed to add to the net income from other sources, interest for the preceding six months upon the indebtedness, in order to ascertain the total amount for distribution. In other words, the debts bear interest from the death of the testator. This we think to be his intention, and not that the indebtedness should bear interest from the date fixed by him in his will to the date of his death, nor that the sum thus ascertained, composed of principal and interest, should be again augmented by adding interest thereon, and thus compound the interest. Testator's intention to convert these debts into advancements is clearly manifest by the subsequent provision of the will, and his power to do so does not admit of argument: Skinner's App., 3 Penn. S. C. Digest 318. And the reason is "because he may prescribe the conditions on which a child shall take the portion bequeathed him:" 1 Rhone's O. C. Pr. 73. The debts thus converted into advancements are not chargeable with interest: Green v. Howell, 6 W. & S. 203. And in Grim's App., 105 Pa. 375, where a testator directed that the sums due him by his sons-in-law, should be taken as advancements to their several wives, it was held that no interest should be charged on the indebtedness of the sons-in-law.

The authorities upon this point are numerous. As an advancement is a pure, irrevocable gift by a parent in his lifetime to his child, on account of his or her share of the estate, after the parent's death: Brightly's Eq., § 389; 1 Bouvier's Law Dict., 92, THOMPSON, J., said in Miller's App., 31 Pa. 337, it "consequently is not chargeable with interest, unless perhaps when expressly given and received upon such terms." But, if a bond, note, or other obligation be given by the child to the parent for the money thus received, it repels the idea of an advancement, and the transaction becomes a debt: Roland v. Schrack, 29 Pa. 125. While the rule is as stated, that advancements do not in general bear interest, yet a testator may direct otherwise, and, as in the present case, indicate from what time the interest shall begin to run. And where it is shown that the settlement of the estate has been for any reason delayed and postponed beyond the ordinary period allowed for the settlement of an estate, or the time prescribed by a testator, then,

in order to work equality among the legatees, interest will be charged upon the advancements: Yundt's App., 13 Pa. 575; Ford's Est., 11 Phila. 97; Thompson's Est., 8 W. N. 16.

But the discussion of the question, so far as applicable to the present case, is premature; for the reason that no distribution of the principal or corpus of the estate is awarded. The account as filed embraces both principal and income, and the latter is alone distributed; while the principal, consisting of cash and unconverted assets, including a number of ground-rents, which, being real estate, are not the proper subjects of an inventory and appraisement of personal estate, not being distributable as such, is awarded to be retained by the trustees to be accounted for in a further account. The impropriety of now determining whether the advancements are chargeable with interest, and from what date, if chargeable, and distributing the interest upon the advancements, when no distribution of the principal is to be made, is therefore apparent. The proper time will be when either a partial or final distribution is directed to be made by the trustees. Not until then will the doctrine res judicata apply.

The exceptions are accordingly sustained, and a decree of distribution of the income will be prepared by counsel in accordance with this opinion.

Subsequently the court entered the following decree:

And now, January 5, 1889, it appearing from the account filed that the actual cash income on hand had been distributed by the executors down to the date of filing the account, and that the equities of the distributees under the adjudication and the opinion of the court will therefore have to be adjusted out of the future income, it is ordered: 1. That the executors credit the issue of Mary Engle Abercrombie with the interest heretofore deducted on the debts of Samuel Appleton and General Abercrombie, from the dates mentioned in the will of decedent down to the date of decedent's death. 2. That all future distributions of income shall be made in accordance with the principles stated in the opinion filed December 15, 1888.

Thereupon Robert E. Patterson and W. H. Drayton, as executors and trustees, and Robert E. Patterson, individually, took this appeal, specifying inter alia that the court erred:

1. In holding that the debts of Samuel Appleton and the estate of General Abercrombie did not bear interest from the respective dates mentioned in the will.

2. In holding that the will showed an intention on the part of the testator to convert these debts into advancements.

3. In directing that the executors credit the issue of Susan Engle Abercrombie with the interest heretofore deducted on the debts of Samuel Appleton and General Abercrombie, from the dates mentioned in the will of decedent down to the date of decedent's death.

5. In holding that it could not, upon the audit of the present account, determine the question whether the advancements to the distributees of the estate, other than Samuel Appleton and the estate of General Abercrombie, were chargeable with interest.

6. In not deciding that such advancements did not bear interest.

*Mr. John G. Johnson* (with him *Mr. Frank P. Prichard*), for the appellants:

1. Did the Abercrombie and Appleton debts bear interest from the dates mentioned in the will to the death of the testator?

In view of the explicit language of the testator, there is no room for the construction put upon the will by the court below, which practically makes the above-mentioned sums debts due to the testator at the dates mentioned in the will, then converts them into advancements bearing no interest until the death of testator, and then immediately reconverts them into " debts due the estate," bearing interest from the testator's death. It is submitted that the only construction consistent with the testator's language is, that these sums were debts due to him calculated to certain dates, and, of course, bearing interest from those dates, and that upon testator's death the amounts then due became debts due the estate, bearing interest under the express terms of the will.

2. Was interest chargeable upon the advances to the children from the expiration of a year after decedent's death?

It has been held in several cases in the Orphans' Court of Philadelphia, that while advancements do not bear interest during the time allowed for the collection and distribution of

the estate, they should bear interest after that time has passed, which in ordinary cases would be after the expiration of one year from the testator's death. The soundness of this doctrine may well be questioned. An advancement is never taken into consideration until the distribution is made. If the distribution be unreasonably delayed, the executors may be compelled to file their account and may be surcharged for any loss occasioned by their delay. If the delay has not been unreasonable, there is no occasion for exacting any penalty from those to whom advances have been made, and there is no more injustice in failing to exact interest after testator's death, than there was before it.

3. Should the court below have decided both these questions on the present account?

The court below was of opinion that it could not decide whether the advancements to the children bore interest, because no distribution was made of the principal, and the decision of the question could not affect the distribution of the income. To this, two answers at once suggest themselves: (1) The distribution of income is in itself a partial distribution of the estate, and necessarily involves the question whether the distributee has received advancements, the interest or principal of which should be set off; and, (2) the present account was an account of principal as well as income, and contained both cash and securities which it was the duty of the court to award to the parties entitled, and in so doing to decide the proportions in which their shares were payable.

*Mr. J. B. Colahan*, for the appellees:

1. It is true, the testator describes the Abercrombie and Appleton debts as "debts," and to that extent distinguishes them from the other advancements made to his children, but we have not urged that the distinction was accidental, though such may have been the case. Whether it was or not, the term was aptly used. These were not sums due by children, but by outside parties, as to whom they were undoubtedly debts. But call them what we will, when the testator came to charge them against the share of his child, they were converted into advancements, and as such do not bear interest. As debts, they were long since barred by the statute of limitations.

2. A testator may undoubtedly impose on a share of his estate any burden he may see fit, but no such burden arises by inference or implication. The takers of a share are compelled to liquidate the amount of the debts as stated in the will and charged in testator's books, and nothing more: Green v. Howell, 6 W. & S. 203; Grim's App., 105 Pa. 375; Miller's App., 31 Pa. 337. If General Patterson had died intestate, these debts could not be charged as advancements against the Abercrombie share: Kreider v. Boyer, 10 W. 54; Yundt's App., 13 Pa. 575; Bird's Est., 2 Pars. 168; Seagrist's App., 10 Pa. 424; Whelen's App., 70 Pa. 410.

3. It has been conceded that the sums charged by the testator against the shares of the children are advancements. It is also conceded that advancements do not bear interest for the period prior to the testator's death. But wherever distribution is postponed for any reason, equality can be had between distributees only by charging interest on advancements, and under the decisions in this state, the rule has been established that where distribution is postponed, interest is to be charged from one year after the death of the testator on all the advancements: Green v. Howell, 6 W. & S. 203; Yundt's App., 13 Pa. 575; Ford's Est., 11 Phila. 97; Wagner's App., 38 Pa. 125; Thompson's Est., 8 W. N. 16.

OPINION, MR. JUSTICE WILLIAMS:

It will tend to clearness and brevity if we keep to the questions proposed in the excellent argument of the appellant and consider them in their order.

First. "Did the Abercrombie and Appleton debts bear interest from the dates mentioned in the will to the death of the testator?" We answer, no! They were debts in the common meaning of the word at the beginning. They were secured as such, and treated so far as we know in all respects as debts, until the testator sat down to make his will. Then the subject of distributing his estate among his children was before him, and we are to consider what he has said upon that subject. The maxim that equality is equity among heirs is a cardinal rule of distribution: Miller's App., 31 Pa. 337. In the absence of expressions clearly indicating a contrary intention, the courts will presume that the testator intended equality of distribution

among his own children, in accordance with the settled policy of the law in this commonwealth: Weaver's App., 63 Pa. 309. As between a loan, a gift and an advancement, the presumption is in favor of an advancement, because of its tendency to equality: Sampson v. Sampson, 4 S. & R. 329. With these principles in mind, we read the provision of the will on which this question depends:

"I direct that the debts due me by the estate of my son-in-law General John J. Abercrombie, deceased, and by Samuel Appleton, Esq., respectively as aforesaid, and also any other sums charged on my books at the time of my death against my sons, daughters or sons-in-law, shall be taken into account as assets by the trustees or trustee on making partition or division of my estate as hereinbefore directed; and the said sums charged against a son shall be taken as a part of the share or shares to be set apart in the said division for or on account of such son or his issue; and the said debts of General John J. Abercrombie and of Samuel Appleton, Esq., shall both be taken as part of the share or shares to be set apart in the said division for or on account of the issue of my said deceased daughter, Mary Ann Engle; and the said sums charged against any other daughter or her husband shall be taken as part of the share or shares to be set apart in said division for or on account of such daughter or her issue."

The presumption that equality was intended by the treatment of all the several debts and sums charged as advances, is not weakened but strengthened by a careful examination of this provision. They are all treated in exactly the same manner, viz., as chargeable against the sons and daughters or their issue, on the general division of his estate, as so much already received. Mrs. Abercrombie's share is not distinguished in any way from that of her brothers and sisters. All of the distributees are to be charged with what they have received, and the daughters are to be charged in addition with what has been received by their husbands, "as part of the share or shares to be set apart in the said division for or on account of" themselves or their issue. As these debts were thus turned into advancements by the terms of the will, they bore no interest during the life of the testator. The amount of each debt was ascertained as of the date given, and by the will it was in effect charged as an advancement as of that date.

Second. " Was interest chargeable upon the advances to the children from the expiration of a year after decedent's death? " Yes! Such seems to be the rule in Pennsylvania and it tends to equality: Yundt's App., 13 Pa. 575; Ford's Estate, 2 W. N. 113. The exception is the case of the advances to General John J. Abercrombie and Samuel Appleton. These were chargeable with interest from the death of the testator by the express direction of the will, and the interest whether received by the trustee or not was to be applied semi-annually to the payment pro tanto of the share of the income of the estate payable to Mrs. Abercrombie or her issue. Interest is to be charged on the advancements to her from the death of her father because he has so ordered; on the advancement made to the other sons and daughters of the testator, from one year thereafter, in accordance with the rule of law above referred to.

Third. " Should the court below have decided both these questions on the present account? " Yes! The total amount of income for distribution cannot be determined without such a decision, nor can the share to be awarded to each in cash. The income is to be distributed, until distribution of the principal or corpus of the estate can be made. The period covered is over three years. For the first year there would be no trouble in ascertaining the amount of the income, but after the first year its amount would depend on whether interest upon the other advancements was to be included or excluded. As the total sum would be thus affected, so would the share of each in the several semi-annual distributions of the income.

As we differ from the court below in our view of the third question, it becomes necessary to reverse the decree of the court below and remit the record for further proceedings in accordance with this opinion.

Decree reversed.