## Glessner's Estate

272

*Harold D. Saylor* and *William C. Ferguson, Jr.,* for exceptant.

*Jesse R. Evans, John Martin Doyle,* and *Paul J. Donnelly,* contra.

SHEELY, P. J., fifty-first judicial district, specially presiding, September 18, 1940.— . . . The real question

raised by exceptant is one of distribution. She contends that by certain transactions between decedent and her son, George O. Glessner, and between decedent and her daughter, Florence L. Holt, the legacies of George O. Glessner and Florence L. Holt under the will have been satisfied in whole or in part. She contends that for the purpose of distribution the amounts involved in these transactions must be brought into account and charged against the distributive shares of the children named.

This contention is based upon the presumption that a parent intends to make equal distribution of his estate among his children and does not intend that the portion provided for any child shall be paid more than once. If, during the lifetime of the decedent, property is transferred to one child, it is presumed that the transfer was made in anticipation of the amount that child would likely receive from the estate of the decedent and as a prepayment thereof. As expressed by some of the cases, decedent becomes his own executor and makes a partial distribution of his estate in his lifetime: see 2 Pomeroy's Equity Jurisprudence 1025, sec. 554. If decedent dies intestate these prepayments are considered advancements: M'Kibbin's Estate, 207 Pa. 1 (1903) ; Eshleman's Appeal, 74 Pa. 42, 47 (1873) ; Intestate Act of June 7, 1917, P. L. 429, sec. 22. If decedent dies testate the prepayments are considered as satisfactions of the legacies to the payees: Miner et ux. v. Atherton's Exec., 35 Pa. 528 (1860). In each case the rule is closely analogous to the rule of ademption of specific legacies and the terms are frequently used interchangeably, probably because the three propositions are based on the theory that decedent did not intend to provide doubly for the object of his bounty: see Alexander's Estate, 83 Pa. Superior Ct. 210 (1924).

The rule is stated in Miner et ux. v. Atherton's Exec., supra, p. 536:

"A legacy by a father to a child is understood as a portion, because it is a provision by a parent for his child.

If the father afterwards advances a portion for that child, it will be an ademption of that legacy, in whole or in part, as the advancements are larger, or equal to, or less, than the testamentary portion."

In Eshleman's Appeal, supra, p. 47, it was said:

"The general doctrine unquestionably is, that an advancement is an irrevocable gift by a parent to a child, of the whole or a part of what it is supposed the child will be entitled to upon the death of the parent, who afterwards dies intestate."

And, in Patterson's Appeal, 128 Pa. 269, 280 (1889), it was said:

"In the absence of expressions clearly indicating a contrary intention, the courts will presume that the testator intended equality of distribution among his own children, in accordance with the settled policy of the law in this commonwealth: Weaver's App., 63 Pa. 309. As between a loan, a gift and an advancement, the presumption is in favor of an advancement, because of its tendency to equality: Sampson v. Sampson, 4 S. & R. 329."

There is nothing in this rule to prevent a parent from making an unequal distribution of his estate among his children or from making a gift to one child during his lifetime without disturbing the distribution of his estate after his death. The rule merely creates a presumption of fact as an aid in determining the intention of decedent, and evidence is admissible to support or rebut the presumption: McCadden's Estate, 29 Dist. R. 214 (1920). If the evidence shows nothing more than a transfer of assets or a payment to or for a child the presumption applies and the transfer or payment would be considered an advancement or a satisfaction of a legacy. But if there is evidence which tends to rebut the presumption a question of fact arises as to what decedent really intended.

In the case of George O. Glessner, the evidence shows that when decedent made her will on July 27, 1926, directing that her estate be divided into three equal parts and giving one part to each of her three children, she was

residing with her sister, Mrs. Benner. Mrs. Benner died on September 3, 1932, and thereafter, on September 26, 1933, the property at 428 Anthwyn Road, Narberth, Pa., was purchased in the name of Anna L. Glessner, widow, and George O. Glessner, and the survivor of them and the heirs and assigns of such survivor. Pursuant to an agreement between decedent and George O. Glessner that if the son would provide a home the mother would supply the money to purchase the property, decedent paid the purchase price of $2,800 for the property which was subject to an existing mortgage of $8,000. Thereafter, in November 1936, she paid an additional sum of $2,000 on the principal of the mortgage, reducing the principal to $6,000 and making her total investment $4,800. After the house was purchased it was occupied by decedent, her son, and his wife and daughter, until decedent died on September 30, 1938. During this period George O. Glessner fulfilled his agreement by paying all the household expenses, taxes, and mortgage interest, and decedent had her living without cost to her.

On January 15, 1937, decedent's other son, H. Hall T. Glessner, died. On March 10, 1937, she added a codicil to her will by which she provided that out of his one-third share of her estate the sum of $50 should be paid to his widow, Mrs. Helen Glessner, and a similar sum to his stepson, Robert Glessner. The remainder of the share was to be divided: one third to George Glessner, one third to Florence Holt, and the remaining one third to her granddaughter, Mrs. Marion Pattison, daughter of Hall Glessner, and the present exceptant. No mention of the Narberth property was made in the codicil.

Exceptant contends that the sum of $4,800 invested by decedent in the Narberth property, which upon her death became the sole property of George O. Glessner, must be considered as a partial satisfaction of his legacy under the will. This contention overlooks the fact that decedent neither purchased the property for her son nor advanced the money to him to enable him to make the purchase.

The purchase was made in their joint names pursuant to the agreement for the support of decedent and, in return for her investment, decedent did receive support for five years. Moreover, by the arrangement she was protected in the event her son predeceased her, as in that event she would have been the sole owner of the property and her investment would have been intact. It is doubtful whether the son benefited by the arrangement in any respect other than the possibility of becoming the sole owner of the property if he survived his mother. In exchange for his occupancy of the house during her lifetime, he was compelled to pay the taxes, the mortgage interest, and the cost of maintaining the home.

In any event, the circumstance that the property was purchased pursuant to a proper contract for support would, in itself, rebut the presumption that the purchase money was intended as a satisfaction of a legacy. Moreover, no reference to the purchase of the property is made in the subsequently-executed codicil to the will by which the son's share in his mother's estate was increased. This, in itself, would not rebut the presumption against double portions: Miner et ux. v. Atherton's Exec., supra; M'Kibbin's Estate, supra; but it is a circumstance to be considered. Furthermore, there is no evidence that George O. Glessner actually received the benefit of the $4,800 investment. Until the death of his mother he was not the sole and absolute owner of the property, and at that time he received it subject to a mortgage of $6,000. The value of the equity of redemption would depend upon the value of the property at that date. On this point there is no evidence, and it would be manifestly unjust to charge him with having received $4,800 on account of his legacy, if the value of the equity of redemption had decreased below that amount.

We conclude that the transaction between decedent and George O. Glessner was the result of a contract for support and that decedent did not thereby intend to satisfy his legacy under her will, in whole or in part.

In the case of Florence Glessner Holt, also known as Florence L. Holt, the situation is somewhat different. In December 1937, after the transactions above referred to and after the execution of the codicil to the will on March 10, 1937, decedent transferred securities having a value of $6,835 to her daughter, Florence, and her husband, Roland G. Holt, as tenants by entireties. At the time of the transfer of the securities decedent referred to her will, but made no statement of the purpose of the transfer.

As indicated in Patterson's Appeal, supra, these transfers could have been loans, gifts, or advancements, but the presumption is in favor of an advancement because it tends to equalize the division among the children. The presumption of advancement or, in this case, satisfaction of the legacy, would therefore arise and there is no evidence to rebut it. Mrs. Holt's legacy must, therefore, be considered satisfied to the extent of $6,835.

The record further shows that Mrs. Glessner, who was the sole legatee and executrix under the will of her sister, Mrs. Benner, issued five checks to her children from her account in the Benner estate. Three of the checks in the sum of $500 each were payable to Florence L. Holt and one in the sum of $500 was payable to H. H. T. Glessner. The stubs of these four checks were marked "gift under will". The will referred to could not have been that of Mrs. Benner as Mrs. Glessner was the sole legatee under that will. Hence, the will referred to must have been that of Mrs. Glessner herself, and these payments must have been intended as partial satisfactions of the legacies therein given to the payees. In this situation the presumption which would arise from the fact of payment is strengthened by the notations on the check stubs. We conclude that these payments from the estate of Mrs. Benner must be considered as satisfactions of the legacy to Mrs. Holt to the extent of $1,500 and of the legacy to H. Hall T. Glessner to the extent of $500.

Another check was issued from the Benner account to R. G. Holt in the sum of $500 and the stub was marked

"left him for taking care of securities." Exceptant contends that this payment must also be considered as a partial satisfaction of the legacy of Florence L. Holt, wife of R. G. Holt. We think the notation on the stub that this amount was "left" him, or paid to him, for taking care of securities, indicates that it was intended as compensation for services and rebuts any presumption of satisfaction.

The contention of the executor that the presumption herein applied does not apply in the case of a will, because a will speaks as of the date of testator's death, cannot be sustained. The will is not destroyed or altered in such cases; the legacies remain the same, but the prepayments are considered as having been made on account of the legacies. In M'Kibbin's Estate, supra, p. 5, the rule is stated:

"Notwithstanding the general rule that advancements, strictly speaking, are confined to cases of intestacy, it is well settled that they may exist, though subsequently a will is made by the parent, and in such cases it depends on the will how such charges are to be considered . . ."

We have the remaining contention of the executor that exceptant in this case, being a grandchild of decedent, cannot raise the question of double portions or satisfaction of legacies to the children of decedent. In support of this proposition he relies upon Swainson v. Dawson, L. R. (1919) 1 Ch. 102. In that case testator divided the residue of his estate into five equal parts and gave one part to each of his three daughters, one to his grandchild by a deceased son, and the fifth to the grandchildren by a deceased daughter. Thereafter he transferred certain securities to his three daughters. In an action brought by the executor to determine whether these gifts should be brought into account and taken as a satisfaction pro tanto of the shares of the daughters in the residuary personalty, the court found from the evidence that testator had not placed himself in loco parentis to the grandchildren and that, in the absence of an affirmative finding on

that point, the grandchildren could not raise the doctrine against double portions. This conclusion was based upon the theory that when a parent gives a legacy to a child without reference to the purpose the legacy is a "portion." That is, the parent is thereby paying a debt of nature to the child, and the child is receiving that to which he is entitled. Consequently, all the children are entitled alike, or according to the schedule adopted in the will. But, if a stranger gives a legacy, it is understood as a bounty and not as payment of a debt. The gift being a bounty, the stranger may distribute it as he pleases and the doctrine against double portions would not apply. The further theory is advanced that the rule against double portions can be applied only for the benefit of the persons as against whom the rule would be applied; that is, persons who are themselves in the position of taking a portion. Therefore, there being no family relation between a grandfather and grandchild, there is no duty on the part of the grandfather to provide a "portion" for the grandchild, and a grandchild cannot raise the doctrine against others.

Under the English rule the present exceptant could not be heard on this question. But does that rule apply in Pennsylvania? There is no case directly in point, but in McCadden's Estate, supra, Judge Lamorelle, of Philadelphia County, applied the rule as against grandchildren (although the same result might have been reached on another theory), and in Eshleman's Appeal, supra, p. 48, the doctrine of advancements was held to apply against a grandchild, and it was said that:

"For purposes of distribution, the intestate should be held, after the death of his son, as standing *in loco parentis* towards Abijah [the grandchild], and all the principles flowing therefrom should be applied."

In Storey's Appeal, 83 Pa. 89 (1877), the doctrine of advancements was again applied against a grandchild.

Adopting the English theory that those against whom the rule of double portions would apply are also entitled

to the benefit of the doctrine, it would follow from these authorities that in Pennsylvania the doctrine would apply both against and in favor of grandchildren who are the children of deceased children of decedent. This result would be consistent with other laws of Pennsylvania, including the support statutes and the inheritance tax statutes, which tend to place a grandparent in loco parentis to the children of his deceased child.

It follows that the present exceptant is not debarred from raising this question. In making distribution, the value of the securities amounting to $6,835 and the checks made payable to Mrs. Holt amounting to $1,500 must be brought into account and charged against Mrs. Holt's distributive share. Likewise, the check made payable to H. H. T. Glessner in the sum of $500 must be brought into account and charged against his share which is distributed under the terms of the codicil.