Houston Estate.

Argued November 16, 1955. Before STERN, C. J., STEARNE, JONES, BELL, MUSMANNO and ARNOLD, JJ.

*William McC. Houston* and *Fred C. Houston, Jr.*, with them *Goethe Faust* and *Houston & Houston*, for appellant.

*Gene E. McDonald*, with him *Lightcap & McDonald*, for appellee.

OPINION BY MR. JUSTICE ALLEN M. STEARNE, January 4, 1956:

The question involved is whether the transfer of a decedent's interest in a partnership was an advancement or a sale. The auditing judge ruled that it was an advancement.

The findings of fact, amply supported by the testimony, are as follows: "Anna R. Houston died intestate, January 25, 1953, survived by her three children, Joseph D. Houston, Matilda A. Haw, and Margaret Clemens as her heirs-at-law . . . Letters of Administra-

tion on the decedent's estate were granted on February 5, 1953 to First National Bank in Greensburg . . . The administrator duly proceeded with the administration of the estate and on September 18, 1953, filed its account showing a balance for distribution of $26,286.75. Anna R. Houston, by a written Bill of sale dated March 1, 1941, duly signed, sealed and witnessed, and reciting a consideration of 'natural love and affection and other valuable considerations and the sum of One ($1.00) Dollar', transferred to her son, Joseph D. Houston, her one-half interest in a partnership, known as Latrobe News Company . . . The value of the one-half interest of Anna R. Houston was $11,000.00 at the time of the transfer to Joseph D. Houston . . . The profits of the partnership due to Joseph D. Houston after March 1, 1941 were paid by checks to his order but by arrangement between Joseph D. Houston and his mother, Anna R. Houston, she received her support from the income from the business . . . On the same date as the transfer of the partnership interest to Joseph D. Houston, March 1, 1941, the decedent went to the office of an attorney, George H. McWherter, Esq. and gave instructions for the drawing of her will. The draught of the will was mailed to her by the attorney. This proposed will was offered in evidence. . . . The decedent took the form for her will to neighbors, told them it was her will and had them sign it as witnesses and placed the paper in her safety deposit box. She never signed this paper . . . The proposed will of the decedent did not mention the transfer of her interest in the partnership to her son, Joseph D. Houston. This proposed will devised the decedent's home property to her two daughters, Matilda A. Haw and Margaret J. Clemens and bequeathed the first $9000.00 of personal estate to the two daughters and the balance if any to the three children, Matilda A. Haw, Margaret J. Clemens, and Jo-

seph D. Houston, equally . . . The decedent made many statements to disinterested parties and to her daughters, at the time of the transfer of the partnership interest to Joseph D. Houston and the incomplete execution of the proposed will, that she had settled her estate and that her son's share was the interest in the Latrobe News Company and that she had left the house to her daughters . . . The decedent believed that [the paper] was a valid will as shown by her declarations to her daughters and her friends as to the contents thereof, by the fact that she showed the paper to her daughter Margaret as her will and she told her son he was named executor therein."

An examination of the testimony discloses that upon the transfer the son thereafter paid his mother between $3,000 and $4,000 each year until her death. These sums constituted the son's share of income from the business. According to the son's testimony his mother made the transfer of her interest in the business with the understanding that the son would support the mother for the rest of her life.

The learned chancellor found that the decedent intended the transfer of her interest in the partnership to be an *advancement*. Such conclusion was based upon: statements of decedent concerning her intent; preparation of a will which, although unexecuted, revealed decedent's intent to equally divide the estate among her three children; statements of decedent which disclosed that she regarded her will as effectively made; the fact that the portion transferred to the son was approximately one-third of the estate.

An advancement is an irrevocable gift by a parent in his lifetime to his child on account of the child's share of the estate, after the parent's decease: *Miller's Appeal*, 31 Pa. 337; *Long's Estate*, 254 Pa. 370, 98 A. 1066; *Harrison's Estate*, 298 Pa. 514, 148 A. 704.

Whether the transaction constitutes an advancement is a question of intention: *Riddle's Estate,* 19 Pa. 431; *Weaver's Appeal,* 63 Pa. 309. The intention of a donor is to be determined as it existed at the time of the transaction, as proved by the contemporary acts and declarations of the parties: *Daniel King's Estate,* 6 Wh. 370; *Miller's Appeal,* 40 Pa. 57; *Oller v. Bonebrake,* 65 Pa. 338; *Merkel's Appeal,* 89 Pa. 340; *Reinoehl's Estate,* 212 Pa. 359, 61 A. 943. While ordinarily declarations of a donor must be part of the *res gestae,* subsequent declarations in recognition of the original expressed intention are entitled to weight: *Merkel's Appeal,* supra. There is a *presumption* that a parent means to treat his children equally: *Weaver's Appeal,* supra; *Patterson's Appeal,* 128 Pa. 269, 18 A. 430; *Long's Estate,* supra; *Laughlin Estate,* 354 Pa. 43, 50, 46 A. 2d 477. In its strict technical sense the law of advancements relates exclusively to cases of intestacy. See Intestate Act of April 24, 1947, P. L. 80, sec. 9, 20 PS 1.9. But in a popular or non-technical sense it may apply where there is a testacy: *Laughlin Estate,* supra, p. 47.

Appellant maintains that the transfer was, in form and fact, a *sale* and not an advancement. He contends that since he agreed to be responsible for one-half the debts and losses of the business the transfer was for a valuable consideration and hence constituted a sale. It is to be noted that though the value of the transferred interest was fixed by the parties at $11,000, the income and profit from such share amounted annually to between $3,000 and $4,000, all of which the donor received until her death twelve years later. It is significant that no beneficial interest was, therefore, enjoyed by the son until his mother's death. It is apparent that the value of the half share of business transferred to the son approximated one-third of the

estate. The division of the balance of the estate between decedent's two daughters was, therefore, in accordance with the presumption that decedent intended an equal distribution among her children. There is no evidence in this record which adequately rebuts this presumption.

The decree of distribution is affirmed. Costs to be paid by appellant.