# Strand Estate

*Louis H. Levitt*, for accountant.
*William T. Adis*, for objector.
*Mark A. Koral*, for Commonwealth.

PAWELEC, *A. J.*, February 20, 1976—John Strand died on March 29, 1974, leaving a will dated

August 31, 1973, which was admitted to probate, upon which letters testamentary were granted to the accountant on April 19, 1974, and proof of publication of the grant of same was submitted.

Decedent was not survived by a spouse.

Payments of Pennsylvania inheritance and estate tax, $8,119.96, on December 31, 1974, and $154.84 on October 15, 1975, were duly vouched.

By his will, testator, after directing the payment of his just debts and the expenses of his last illness and funeral, and certain directions with respect to his funeral and burial, gave and bequeathed his Mahogany drop-leaf table, his Lava top table and his chiffoniere to his daughter, Martha (nee Strand) Kuney (and since these items do not appear in the account, no award thereof can be made in this adjudication); gave and bequeathed the remainder of his personal property to his daughter, Lillian Freda (nee Strand) Jahnke (and since no personal property is carried in the account, no award thereof can be made in this adjudication); and the residue of his estate testator gave, devised and bequeathed 30 percent to each of Martha (Kuney) and Lillian (Jahnke), 25 percent to Edith (Fisher); ten percent to Lillian F. Jahnke, in trust for his grandchild, Walter (Jahnke), and five percent to Lillian F. Jahnke, in trust for his grandchild, Lindy (Jahnke), and in the event either grandchild is a minor (and both are stated to be minors), the shares of said minor grandchildren to be retained in trust to pay the net income therefrom for the care, welfare and education of said minor grandchildren.

The family exemption was not claimed.

All parties in interest are stated to have had

notice of the audit and were either present or represented at the audit.

Mr. Koral entered his appearance on behalf of the Commonwealth of Pennsylvania, claiming such transfer inheritance tax as may be due and assessed without prejudice to the right of the Commonwealth to pass on debts and deductions. The awards will be made subject to that claim.

Edith Fisher, one of the residuary beneficiaries, filed objections to the account as stated, necessitating a hearing thereon. Objections 1, 2 and 3 were withdrawn at the hearing. In objection 4, Mrs. Fisher disputes the amount of the fee taken by the executrix and the compensation claimed by the attorney for the estate. The remaining objection concerns certain moneys which decedent paid to his three daughters subsequent to the execution of his will. Objector contends that these payments were "advancements" or "satisfactions" of testamentary bequests, and, as such, should be deducted pro tanto from the distributive shares of the said daughters. The accountant takes the position that the payments were nothing more than inter vivos gifts.

It is well settled that a fiduciary is entitled to "fair and just" compensation. What is "fair and just" depends upon the extent and character of the labor and responsibilities involved: In re Reed Estate, 462 Pa. 336, 341 A. 2d 108 (Pa., 1975); Rauch Estate, 44 D. & C. 2d 674 (1968); Anderson Estate, 77 D. & C. 74 (1951). Counsel fees are also compensation for services rendered. In LaRocca Estate, 431 Pa. 542, 246 A. 2d 337 (1968), the Supreme Court, in setting forth the factors to be con-

sidered in determining the compensation of the attorney for the estate, stated, at page 546:

"The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was 'created' by the attorney; the professional skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question."

See also Thompson Estate, 426 Pa. 270, 232 A. 2d 625 (1967); Rauch Estate, supra. This court has reviewed the account and the testimony offered in support of the fees and commissions and concludes they are excessive. Accordingly, counsel fees are reduced from $8,750 to $8,000. The commission of the executrix, credited on page 4 of the account as $8,630, exceeds that which is the customary charge by executors, including corporate fiduciaries. The executrix has offered no evidence of any extraordinary service to warrant such commission. Accordingly, the commission is reduced to $7,200.

"In case of testacy where the will does not refer to advancements it is considered that the will extinguishes or merges all prior advancements. The law presumes that by making such a will testator disposed of his estate as he desired and with due con-

sideration for the rights of those to whom advancements had been made. (citations omitted).

"The term advancement, however, is also used in a popular or non-technical sense, where the will directs that advancements to beneficiaries shall be deducted from their shares. Testator may refer to prior advancements in such a way as to require that they be taken into consideration in the distribution of his estate. Where it is the testator's intention, as shown by the will, to require such charge, deduction or accounting or otherwise to require the consideration of advancements, such intention will be given effect. (citations omitted).

"The method of calculation of distributive shares is the same, whether the advancements are in an intestate's estate and are regarded in their strict technical sense, or under the terms of a will where they are treated in their popular or non-technical sense. Advancements are to be treated as if repayment had been made to the estate, the total divided among the heirs or beneficiaries, and the advancements deducted from the shares of those advanced. The whole is placed in hotchpot, the advancements added and the total divided." (citations omitted).

Here, decedent died testate and his will is necessarily silent in regard to these distributions as they were made after its execution. Thus, there could be no advancements either in the technical or non-technical sense. The real issue is, are the legacies in the will pro tanto satisfied by the subsequent distributions? The crucial factor in the answer to that question is the intent of testator. Did testator intend to satisfy by inter vivos transfer all or part of

what he originally gave the beneficiaries in his will, or did he intend the beneficiaries to receive an extra share when he made the distributions: Yingling Estate (No. 1), 12 D. & C. 2d 543 (1957); Yingling Estate (No. 2), 13 D. & C. 2d 399 (1957); Glessner's Estate, 40 D. & C. 271 (1940).

Extrinsic evidence is admissible to prove a satisfaction: Miner v. Atherton's Executor, 35 Pa. 528, 536 (1860); Laning's Estate, 241 Pa. 98, 88 Atl. 289 (1913); Glessner's Estate, supra; Yingling's Estate (No. 1), supra. Such evidence is admissible either to rebut or confirm the presumption of satisfaction: Miner v. Atherton, supra; Yingling Estate (No. 1), supra, and Glessner's Estate, supra.

Unfortunately, neither of the parties chose to offer any evidence on this issue. Objector chose to reply on the presumption of satisfaction and accountant takes the position that, since there were no advancements, there is no presumption.

As stated before, testator's intent is the determinative factor. Presumptions are merely an aid in determining that intent. As between a loan, a gift and an advancement, the presumption is in favor of an advancement: Sampson v. Sampson, 4 S. & R. 329 (1818). The basis for the presumption is stated in Patterson's Appeal, 128 Pa. 269 at 280, 18 Atl. 430 (1889):

"In the absence of expressions clearly indicating a contrary intention, the courts will presume that the testator intended equality of distribution among his own children, in accordance with the settled policy of the law in this commonwealth: Weaver's App., 63 Pa. 309."

However, if testator expresses an intent for inequality, the rationale underlying the presumption

of equality is inapplicable and the presumption should fall. However, the presumption in regard to the satisfaction of a legacy is not based on the premise of equality of distribution among children. It is based on the premise that in effecting distribution of his estate among his children, testator does not intend that the portion provided for any child be paid more than once, i.e., no double portions to any child. This was clearly stated in Miner v. Atherton, supra, where the court said, at page 536:

"A legacy by a father to a child is understood as a portion, because it is a provision by a parent for his child. If the father afterwards advances a portion for that child, it will be an ademption of that legacy, in whole or in part, as the advancements are larger, or equal to, or less, than the testamentary portion."

See also Fiduciary Review, December, 1957, page 4; Alexander's Estate, 83 Pa. Superior Ct. 210 (1924).

This presumption certainly does not prevent a parent from making a gift to one child during his lifetime without disturbing the distribution of his estate after his death under his will. However, if there is no evidence of testator's intent, then the presumption against double portions compels the conclusion that the distribution or transfer or payment is a satisfaction of the legacy. If evidence is presented which tends to rebut the presumption of satisfaction, then a question of fact arises as to testator's intent. This question must be resolved by the factfinder.

Here, there was no evidence presented as to testator's intention in making the distributions on January 5, 1974, and March 12, 1974. As a result, the presumption prevails and the distributions

must be considered as pro tanto satisfactions of the legacies. Accordingly, for purposes of distribution, the sum of $27,000 distributed by decedent to his three daughters on January 5, 1974, and March 12, 1974, must be treated as having been repaid to the estate, and the total must be divided among all the heirs in accordance with the percentages stated in the residuary clause. Then, the amounts already distributed are to be deducted from the respective shares of those who received the said distributions.

The remaining objection presents a problem of another nature. Decedent executed his will on August 31, 1973. All parties agree that, subsequently, he made the following distributions to his three daughters:

|          | Lillian Jahnke | Edith Fisher | Martha Kuney |
|----------|----------------|--------------|--------------|
| 1/5/74   | $ 5,000        | $1,000       | $2,000       |
| 3/12/74  | 10,000         | 2,000        | 7,000        |

Mrs. Fisher contends that these transfers "were advancements and should be deducted from the final distributive shares of each of the three daughters." In her brief, she argues "that the residuary bequests to the daughters are satisfied pro tanto by the amounts of the inter vivos transfers made by decedent after the execution of the will and that the distributive shares of the daughters should be computed under the doctrine of hotchpot."

Accountant argues that the doctrine of advancements is not applicable and, therefore, hotchpot is not applicable.

Our Supreme Court reviewed the doctrines of advancements and hotchpot in Laughlin Estate, 354

Pa. 43, 46 A. 2d 477 (1946), wherein it stated, at page 47:

"An advancement in its strict technical sense relates exclusively to cases of intestacy. It is an irrevocable gift by a parent to a child in anticipation of such child's future share of the parent's estate. (citations omitted).

The account contains a combined balance of principal, personal estate, balance of principal, proceeds of sale of real estate, being premises 6891 North Nineteenth Street, Philadelphia, Pa., and the balance of income, personalty, of $136,642.66 to which add surcharges as recited above:

| | | |
|---|---|---|
| Attorney Fee | $   750.00 | |
| Executrix's Commission | 1,430.00 | 1,430.00 |
| | $2,180.00 | 2,180.00 |
| making | | $138,822.66 |
| to which add, for the purposes of this adjudication, the sums distributed by decedent to his three daughters prior to his death | | 27,000.00 |
| making | | $165,822.66 |

which, composed as indicated in the account, together with any additional income or interest on deposits, and subject to all distributions heretofore properly made, is awarded as follows: 30 percent, less $15,000 previously paid, as recited above, to Lillian F. Jahnke; 30 percent, less $9,000 previously paid, as recited above, to Martha Kuney; 25 percent, less $3,000 previously paid, as recited above, to Edith S. Fisher; ten percent to Lillian F. Jahnke, trustee for Walter Jahnke, in trust for the uses and purposes set forth in decedent's will; and

five percent to Lillian F. Jahnke, trustee for Lindy S. Jahnke, in trust for the uses and purposes set forth in decedent's will.

Payment and distribution is so decreed and leave is granted to the accountant to make all transfers necessary to effect distribution in accordance with this adjudication.

A schedule of distribution, duly certified by counsel to be correct and in conformity with this adjudication, complying with the provisions of Rule of Court 72, shall, within 90 days after the absolute confirmation of the account, be submitted to the auditing judge. The schedule, when approved and annexed hereto, will form part hereof.

A certificate of the official examiner as to his examination of the assets awarded in trust will be submitted to the auditing judge in accordance with Rule 91.

And now, February 20, 1976, the account is confirmed nisi.